DETROIT FREE PRESS v. PATTENGILL.[1]

GUARANTY—NOTICE OF ACCEPTANCE—WHEN REQUIRED.
  Notice of acceptance is essential to bind as guarantor a person who, in response to the request of the principal, signs a guaranty for the payment of papers to be furnished him for sale, where the offer of the guarantee to furnish the papers was conditional upon its approval of the guarantor. *De Cremer v. Anderson*, 113 Mich. 578.

Error to Ingham; Wiest, J. Submitted November 18, 1908. (Docket No. 143.) Decided December 21, 1908.

Assumpsit by the Detroit Free Press against Henry R. Pattengill on a guaranty of the performance of a contract for the sale of certain papers. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Tuttle, McArthur & Dunnebacke*, for appellant.

*Raudabaugh & Person*, for appellee.

---

[1] Rehearing denied May 25, 1909.

In November, 1899, Mrs. M. A. Clarkson was constituted the circulating agent at Lansing of the Detroit Free Press; Mrs. M. B. Ferrey signing the customary guaranty required by the Free Press company.   On December 31, 1900, a lease of the agency was executed by Mrs. Clarkson to Mr. Willis M. Kimmel.   This lease included the furniture and other appurtenances belonging to the agency, and was to continue in force one year, and, to secure its performance on the part of Kimmel, a bond was given to Mrs. Clarkson; the defendant, Pattengill, becoming Kimmel's surety.   The Free Press, however, continued to recognize Mrs. Clarkson as the agent of the company, and all communications from the Free Press office with respect to the agency continued to be sent in her name.   This arrangement was found to be productive of confusion, and, to obviate the difficulty, Mr. Kimmel brought about an arrangement whereby the business of the agency should be conducted in his own name.   Mr. Gillespie, circulation manager of the Free Press, came out to Lansing, and arrangements were completed; Kimmel agreeing to give security directly to the Free Press in place of Mrs. Clarkson, her connection with the business of the agency thereupon to cease.   On Gillespie's return to Detroit he sent to Kimmel a blank undertaking, accompanying the same with a letter, which reads as follows:

"We inclose a bond, which, if signed by some good surety, responsible for the amount, and returned to us, will be accepted in place of the bond furnished by Mrs. Clarkson at the present time in payment of the account. We shall be very glad to send the papers direct to you as soon as the bond is on file at our office.   When returning same, please make mention of this fact, so that the clerical force of the office will understand it, provided the writer happens to be absent from the city."

The bond mentioned in the letter is the undertaking in suit.   It was a printed form, the upper or contract portion of which had been crossed off with a lead pencil at the Free Press office before being sent out to Kimmel.   It

was presented to Mr. Pattengill by Mr. Kimmel shortly after its receipt by the latter, and was as follows:

"December 31, 1891 (1901).
"To THE DETROIT FREE PRESS CO.,
"Detroit, Mich.

"You are hereby authorized to furnish W. M. Kimmel, of Lansing, Mich., with copies of the Detroit Free Press for sale, the undersigned hereby agreeing to become responsible to you for the prompt payment of all bills for such papers to the amount of $500.

"The undersigned also agreeing to become responsible for any loss to the Free Press Co. not exceeding $300.00 in the event of the nonperformance of section six of the above agreement.

[Signed] "HENRY R. PATTENGILL,
"Surety, of Lansing, Mich."

After the paper was signed by Mr. Pattengill, it was returned to the Free Press office. Mr. Gillespie testified that it was sent to the Free Press office, and he presumes it came from Mr. Kimmel, but that there is no correspondence at the office to show whom it came from. Neither Mr. Pattengill nor Mr. Kimmel undertakes to say in what manner it was returned to the Free Press. No notice of the receipt or acceptance of the undertaking was given by the Free Press to either Mr. Pattengill or Mr. Kimmel, other than thenceforward the business was done in Mr. Kimmel's name, or, as Mr. Gillespie puts it, the bond was filed and the service given. Matters continued thus until 1906; Mr. Kimmel being regularly supplied with papers, and the lease between Mrs. Clarkson and Kimmel being continued in force by oral arrangement from time to time, except as to the amount of rental. In December, 1906, the agency was terminated by the Free Press and the distribution of the papers at Lansing placed in other hands. A demand was made upon Mr. Pattengill in May following, and upon his refusal to settle, suit was brought. At the trial it was stipulated by counsel for the respective parties that the amount due and owing to the plaintiff for papers furnished to Mr. Kimmel

was the sum of $432.93. It is apparent from the record that Kimmel paid for all papers delivered to him by the Free Press during the years 1901, 1902, 1903, 1904, and 1905, and that the agreed balance was for papers delivered wholly in the year 1906. At the close of the proofs each party moved the court for a direction of a verdict. There being no disputed question of fact, after due consideration the court directed a verdict for the defendant.

BROOKE, J. (*after stating the facts*). It was the contention of the plaintiff in the case that the undertaking in question, its execution and delivery being admitted by the defendant, rendered the defendant liable to plaintiff in the amount of the conceded balance. The defendant urged: (*a*) That the undertaking was no more than an offer on the part of defendant to become surety for Mr. Kimmel, and that, before the defendant could be bound, it was necessary that the Free Press company should notify him of its acceptance of him as guarantor; and (*b*) that, in any event, the amount of the defendant's liability was limited to the sum of $500, and inasmuch as Kimmel paid for all the papers sent him in 1901, 1902, 1903, 1904, and 1905, a sum largely in excess of $500, the defendant's liability under the guaranty was canceled. If, as contended by the plaintiff, the writing sued upon is not a collateral but an original promise, it is entirely obvious that the defendant's liability thereunder is limited to the sum of $500, and inasmuch as Kimmel bought and paid for several thousand dollars' worth of papers since the execution of the undertaking, his liability thereunder would clearly be at an end. We think the true construction of the undertaking is that it is a collateral guaranty. The situation of the parties indicates that it was the desire of the Free Press to have security from Kimmel for the payment of such papers as it should sell him (Kimmel). It was Pattengill's object to furnish such security. The undertaking therefore must be construed as a guaranty, and, under the rule laid down in *De Cremer* v. *Anderson*, 113

Mich. 578, can only become binding upon the guarantor after notice of acceptance.

Was there such notice in this case? A careful examination of the record fails to disclose either notice or knowledge on the part of the defendant of the acceptance of his undertaking. It is true that he knew that Kimmel was receiving papers from the Free Press Company, and it is likewise true that for a time he received a copy of the Free Press gratuitously from Kimmel; but we do not think that either of these circumstances is sufficient to constitute notice to him of the acceptance of his undertaking. In the case of *Davis Sewing Machine Co.* v. *Richards*, 115 U. S. 524, it is said:

"If the guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guaranty is, in legal effect, an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract."

We are unable to see in what particular the undertaking here sued upon differs from the guaranty described above. It was not signed by Pattengill at the request of plaintiff, no consideration passed from the plaintiff to Pattengill or was acknowledged in the undertaking, it was not accepted by the plaintiff at the time it was given, the Free Press company did not accept it until it had satisfied itself of the responsibility of Pattengill, and no notice of its acceptance was ever given Pattengill, nor, under the facts of the case, is he chargeable with knowledge of its acceptance.

Judgment is affirmed.

Grant, C. J., and Blair, Ostrander, and Hooker, JJ., concurred.