# APRIL TERM, 1915.

### STATE NATIONAL BANK OF ALBUQUERQUE *v.* WERNICKE.

1. GUARANTY — PRINCIPAL AND SURETY — ACCEPTANCE — BOND — NOTICE.

   There was a sufficient notice of acceptance by plaintiff bank of defendant's bond, guaranteeing the obligations of a third party, in order to render the bond valid as between the bank and defendant guarantor, who was shown by the testimony to have written suggesting to the principal debtor that such bond be executed, where the bank forwarded to the defendant a bond in the form of a guaranty containing the terms suggested by him.[1]

2. SAME — EVIDENCE — PAROL EVIDENCE RULE — CONTRACTS — AMBIGUITY.

   Under a simple contract of guaranty that the principal debtor would punctually pay any and all indebtedness to the plaintiff bank up to a stated amount, it was reversible error to permit the defendant to testify that his understanding when he signed the guaranty was that the obligation should extend to future indebtedness only.

3. SAME—CONSIDERATION—SURETYSHIP—BANKS AND BANKING.

   Although the evidence established the fact that the plaintiff bank made advances to the principal debtor a number of days before the defendant executed the guaranty, which was forwarded to him pursuant to his suggestion, the plaintiff was entitled to recover notwithstanding that no additional consideration passed after the guaranty was received by it.

---

[1] Upon the necessity of notice of acceptance to bind guarantor, see notes in 16 L. R. A. (N. S.) 353; 33 L. R. A. (N. S.) 960, and 48 L. R. A. (N. S.) 198.

On the question as to when a guaranty is a continuing one, see note in 39 L. R. A. (N. S.) 724.

4. SAME—FRAUD—CONCEALMENT.

No such fraud as would vitiate an agreement was disclosed by evidence that the plaintiff did not state to the guarantor that the principal debtor was indebted to it at the time of the execution of the instrument: unless the concealment was such as to amount to fraud the surety would not be released and failure to advise the guarantor was not fraudulent.

5. SAME—SUBJECTS INCLUDED—CONSTRUCTION OF CONTRACT.

Where plaintiff bank held notes of one of the officers of the debtor corporation to the extent of over five hundred dollars and the corporation indorsed such obligation, although there was no consideration for doing so, the notes which had been executed prior to its organization were not obligations secured by the guaranty; also, the guarantor was under no legal obligation to pay the amount of $350 which was advanced to the company after he withdrew the guaranty.

KUHN, STONE, and OSTRANDER, JJ., dissenting.

Error to Kent; Brown, J. Submitted October 7, 1913. (Docket No. 3.) Decided April 6, 1915.

Assumpsit by the State National Bank of Albuquerque against Otto H. L. Wernicke upon a contract of guaranty. Judgment for defendant. Plaintiff brings error. Reversed.

*Carroll, Kirwin & Hollway,* for appellant.

*Wilson & Wilson,* for appellee.

BIRD, J. This suit was commenced by the plaintiff to enforce payment on a contract of guaranty executed by the defendant in February, 1907. Judgment passed for the defendant in the trial court, and plaintiff assigns error thereon.

It appears that defendant, who resides in Grand Rapids, had in 1907 a small interest in a merchandise corporation, doing business in Albuquerque, N. M. He also appears to have had a friendly interest in

F. J. Houston, who ran the business prior to September, 1906, at which time the F. J. Houston Company was organized and took over the business. By reason of a lack of sufficient capital, the F. J. Houston Company was financially embarrassed in December, 1906, and was unable to take care of an overdraft owing to plaintiff, upon which it was being pressed for payment. While matters were in this situation, F. J. Houston, the manager of the company, appealed to defendant to relieve the situation, by purchasing more stock of the company. Defendant in reply indicated his inability to take more stock, but suggested relief in another way, which is shown by the following letter:

"F. J. Houston Company,
    "Albuquerque, New Mexico.
*"Gentlemen:*
    "Your communication of the 21st inst. (12th) and the one from my brother Fred have been received and noted. My commitments in other directions for the present are such that I could not increase my investment in your enterprise at the present time, no matter how anxious I might be to do so.

    "You state that you owe for merchandise and other incidentals about $2,000. Of this amount there is due the Macey Company about $275.00, and I figure that you would also have some open accounts on your books not subject to discount, probably $500.00. From this it appears that you are short of capital or credit to the extent of about $1,500. I will arrange a credit for you with the Macey Company of $500.00, upon which you are expected to pay 6 per cent. interest from the time the accounts become due in the ordinary course of business, and it may be that the company will require you to give notes in settlement of balance, but the notes will not be discounted nor presented through any bank, so that you will not have any trouble regarding the same.

    "In addition to this, if you can arrange it with the bank with which you are doing business to give you a line of credit of $1,200 or $1,500, and if they are willing to accept my guarantee in shape of bond or the

usual form of guarantee, so that I will not have to be bothered with the signing of the notes each time, I am willing to let you use the credit of my name to that extent, but let me suggest that in case you can make such arrangement with your bank that you avoid checking your balance down to less than 20 per cent. of the amount borrowed. It is a poor practice and makes your account look hard up to the bank.

"Hoping this will enable you to get along until you can place some more stock, or until business gets into better shape, I remain,

"Sincerely yours,
"O. H. L. WERNICKE."

This letter was taken to plaintiff by Mr. Houston, whereupon a written guaranty was prepared by the bank and forwarded to defendant. It was executed on February 20, 1907, and returned to plaintiff. The guaranty was in the following form:

"For and in consideration of the sum of one dollar, to me in hand paid by the State National Bank of Albuquerque, New Mexico, the receipt whereof is hereby confessed and acknowledged, and the further consideration that the said the State National Bank of Albuquerque, New Mexico, upon my request extend credit to the F. J. Houston Company in an amount not exceeding fifteen hundred ($1,500.00) dollars, I hereby guarantee that the said F. J. Houston Company shall punctually pay any and all indebtedness of the said F. J. Houston Company to the said bank to the extent and up to the said amount, the sum of fifteen hundred ($1,500.00) dollars, and I hereby promise and agree to and with the said the State National Bank of Albuquerque, New Mexico, that the F. J. Houston Company will well and truly pay any and all aforesaid notes and obligations of the said F. J. Houston Company at the several times and in the manner mentioned and to be mentioned in any and all notes of the said F. J. Houston Company, not exceeding fifteen hundred ($1,500.00) dollars.

"And I hereby expressly waive and dispense with any demand upon the said F. J. Houston Company, and any notice of any nonperformance on the part of the said F. J. Houston Company.

"And I hereby waive the necessity of requiring any notice of nonpayment or nonperformance or proof of notice or demand being made whereby to charge me ' therefor.

"In witness whereof, I have hereunto set my hand and seal this 20th day of February, 1907.

[Signed] "O. H. L. Wernicke,   [Seal.]
"Grand Rapids, Mich."

After the receipt of defendant's letter offering to execute the guaranty, but before it was executed and returned, plaintiff discounted a note for F. J. Houston Company in the sum of $1,575. This amount was made up by an overdraft of $1,085.69, and the balance, $415.31, was passed to the credit of the company. This note was renewed several times, and then payment of $575 was made thereon, thereby reducing it to $1,000. Subsequently, and on November 9, 1908, the balance on two notes given by Houston previous to the organization of the company, and afterwards renewed with the company as indorser, was added to the $1,000, and a new note discounted for $1,520. This note was renewed from time to time, but was never paid. On March 16, 1908, defendant advised plaintiff that he would not be responsible for any increase in the indebtedness then existing, and that he desired the amount then owing reduced as rapidly as possible, so that he might be relieved of all liability. After this, and on March 4, 1909, a new loan of $350 was made to the company by the plaintiff. The company went into the hands of a receiver in September, 1909, owing plaintiff a sum in excess of the amount named in the guaranty. The matter was tried before the court, and a finding of facts was made, and the conclusions of law thereon were:

(1) Mr. Wernicke's letter of January 17, 1907, to the Houston Company, did not constitute a guaranty upon which the bank could extend credit to the Houston Company.

(2) Mr. Wernicke's guaranty of February 20, 1907,

did not apply to any existing indebtedness of the Houston Company, but applied only to such loans as the bank might thereafter make to the company, relying on the guaranty. The bank made no loans to the company after receiving the guaranty, and before Mr. Wernicke withdrew it on March 16, 1908. Therefore there is no liability on the guaranty.

The trial court permitted defendant to testify that his understanding was at the time the guaranty was signed that it would apply only to future indebtedness. This was allowed over plaintiff's objection, on the ground that the guaranty was ambiguous in this respect. This was error. The undertaking of defendant was a simple contract of guaranty, providing for a cash credit of $1,500 at the plaintiff bank, and the language creating that obligation was involved in no such verbal haze as would justify invoking that exception to the general rule excluding parol testimony.

The case of the *Detroit Free Press* v. *Pattengill*, 155 Mich. 272 (118 N. W. 927), is relied upon to demonstrate that the trial court was in error in refusing to hold that defendant's contract of suretyship never became operative against him by reason of the failure of the plaintiff to advise him that it was accepted. In the case cited the obligee in the bond sent to one Kimmel a blank bond, with the suggestion that, if he would secure a responsible surety, it would furnish him newspapers. The surety was secured and the bond returned, and nothing was ever said by the Detroit Free Press Company as to whether it accepted the bond. In the instant case the suggestion of suretyship was made by the defendant himself. When the suggestion was communicated to the plaintiff, it prepared the bond and returned it to the defendant for his signature. The drawing up of the bond and returning it to the defendant for his signature after being advised that he was willing to become surety were acts which amounted to a notice of its accept-

ance. And therein lies the difference between the instant case and the case cited.

It is urged that, inasmuch as the $1,575 note was discounted by plaintiff on the 11th day of February, nine days before the guaranty was executed, there was no consideration passing to the debtor which would support the guaranty. While there was an adjustment of the financial matters of plaintiff and the Houston Company before the guaranty was signed, it is obvious that they were adjusted and additional credit extended to the company on the strength of defendant's letter, in which he promised to execute a guaranty to the amount of $1,500. It is doubtless true, as argued by counsel, that the letter itself did not amount to a guaranty; it was simply a promise to execute a guaranty. And it is quite likely that the bank took some chances in adjusting their matters in the way they did before they were advised that the guaranty had been executed; but that was a contingency which never happened. The guaranty was subsequently executed as promised, and the mere fact that it would have been difficult to enforce payment if the guaranty had not been executed affords no reason why the additional credit extended to the company in reliance upon defendant's letter should not serve as a consideration to support his guaranty. If any further consideration were needed, it can be found in the fact that plaintiff was threatening the Houston Company with legal proceedings if it did not make payment of its overdraft.

But it is argued that the plaintiff concealed the fact from defendant that the company was indebted to the bank, and therefore it was such a concealment of a material part of the transaction as would make it inequitable to enforce the contract. Unless the concealment amounted to a fraud, the surety would not thereby be released. If the defendant had inquired

as to the fact, and the truth had been evaded, or otherwise concealed, it would then have amounted to a fraud; but, if no inquiry were made, the failure of plaintiff to disclose to the guarantor the indebtedness of the Houston Company to the bank would not amount to a fraud. 1 Brandt on Suretyship (3d Ed.), § 473; *Hamilton* v. *Watson*, 12 Clark & Finnellys (Eng.), 108.

The defendant did not undertake by his contract to guarantee the payment of any existing note or overdraft owing by Houston & Co. to the bank. What he proposed to do in his letter, and what he afterwards did do, was to guarantee a cash credit at the bank for Houston & Co. After he did so he was liable to the extent of his guaranty, whatever the form of the evidence of indebtedness might be. After the money was loaned to Houston & Co. in reliance upon the defendant's letter and guaranty, it was at its disposal, and if that company saw fit to use some or all of the $1,500 in paying existing indebtedness to the bank, of what importance is it, and how was the defendant prejudiced by such application? The defendant knew before he signed the guaranty that the Houston Company was experiencing some rough weather, and needed assistance, and he figured out himself in his letter that the company would need a credit of $1,200 or $1,500, and he consented to become surety in that amount to assist the company in making payment of its pressing demands, and it appears to me to be of no moment that the bank happened to be the owner of one of those demands. Our conclusion is that the defendant is liable on his contract. *Hamilton* v. *Watson*, *supra*.

The question then resolves itself into one of how much of the indebtedness to the bank is covered by defendant's guaranty. The testimony shows that $520 of the note for $1,520 which was owing to the

plaintiff when the company failed was made up of the balance due on two notes owing to plaintiff by Houston before the company was formed. It is true that upon some of the renewals of these notes, the company appeared as indorser, but the trial court found that there was no consideration shown for such indorsements. If the $520 was made up of the individual indebtedness of Houston, neither Houston nor the bank had any right to merge it with the amount owing by Houston & Co., and thereby compel the guarantor to pay Houston's individual debts. The $520 is, therefore, not covered by defendant's guaranty. It further appears that a credit of $350 was extended to the company after the defendant withdrew his guaranty. It is clear that this sum should not be included within the guaranty.

For the reasons indicated, the judgment is reversed, and a new trial ordered.

BROOKE, C. J., and MCALVAY, MOORE, and STEERE, JJ., concurred with BIRD, J.

OSTRANDER, J. (*dissenting*). Plaintiff relies upon an agreement of defendant—a contract—and, theoretically, upon something done by plaintiff in reliance upon it. Treating the making out and forwarding of the form of guaranty as a notification to defendant that the plaintiff had received and would accept the offer contained in defendant's letter to his friend, how can it be said that before that time there was a contract—an agreement of any sort? Clearly, there was none. Now, it is undisputed that after the contract was entered into plaintiff did nothing in reliance upon it.

The lower court was right, and its judgment should be affirmed.

KUHN and STONE, JJ., concurred with OSTRANDER, J.