ANGELO IAFRATE COMPANY v M & K DEVELOPMENT
COMPANY

1. APPEAL AND ERROR—PLEADINGS—GUARANTEE CONTRACT—MISREP-
   RESENTATION—BREACH OF CONTRACT.

   The question of the existence of a guarantee contract can be
   raised on appeal by a plaintiff where the pretrial results and
   the defendant's own trial brief address both a misrepresenta-
   tion issue *and* a breach of guarantee contract issue; the func-
   tion of the pleadings is to act as a guide rope, not as a snare or
   a hangman's noose.

2. CONTRACTS—GUARANTEE CONTRACT—COLLATERAL PERSON—PRI-
   MARY OBLIGATION—NONPERFORMANCE.

   A guarantee contract is understood as an enforceable undertak-
   ing or promise by one person collateral to a primary or princi-
   pal obligation of another which binds the person making the
   promise to performance of the primary obligation in the event
   of nonperformance, the *secondary party thus becomes primar-
   ily responsible for performance.*

3. CONTRACTS—GUARANTEE CONTRACTS—QUESTION OF LAW—INTENT
   OF PARTIES—NATURE OF PROMISE—MUTUAL ASSENT.

   The matter of whether or not a certain letter from a financial
   institution to a contractor constituted a guarantee contract is a
   question involving the intention of the parties and the nature
   of the promise and thereby is a question of law which must be
   tested by whether an objective manifestation of mutual assent
   appeared.

4. CONTRACTS—RELIANCE—MAINTAINING AN ACTION—CONSIDERATION
   —OFFER AND ACCEPTANCE.

   Reliance is not necessary to maintain a contract action; however,

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur 2d, Guaranty § 119.
[2] 38 Am Jur 2d, Guaranty §§ 2–4.
[3] 38 Am Jur 2d, Guaranty § 72.
[4] 38 Am Jur 2d, Guaranty §§ 42, 43.
[5] 38 am Jur 2d, Guaranty § 73 *et seq.*

reliance may be relevant to proving the elements of consideration and offer and acceptance in some instances.

5. CONTRACTS—GUARANTEE CONTRACTS—CONSTRUCTION CONTRACTS—
   WRITTEN ASSURANCES OF PAYMENT—ELEMENT OF A GUARANTEE
   CONTRACT.

   The necessary elements of a guarantee contract were met where a plaintiff contractor returned to complete certain construction, which it was not obligated to complete, only after receiving a defendant's written assurances of payment if the plaintiff returned to work and completed work on the project.

Appeal from Wayne, Carl F. Ingraham, J. Submitted October 5, 1977, at Detroit. (Docket No. 31408.) Decided January 4, 1978.

Complaint by Angelo Iafrate Company against M & K Development Company, McMahon Engineering Company and Detroit and Northern Savings and Loan Association for monies due and owing on a construction contract. Judgment for plaintiff as to defendant M & K Company and judgment for defendant Detroit and Northern. Plaintiff appeals from the judgment for Detroit and Northern. Reversed and remanded.

*Bodman, Longley, Bogle & Dahling* (by *Andrew J. Broder*), for plaintiff.

*Hinks, Knight & Putnam* (by *John C. Auld*), for defendant Detroit and Northern Savings and Loan Association.

Before: D. F. WALSH, P. J., and V. J. BRENNAN and BEASLEY, JJ.

V. J. BRENNAN, J. Plaintiff Angelo Iafrate Company (hereafter Iafrate) appeals from the grant of directed verdict for defendant Detroit and Northern Savings and Loan Association (hereafter Detroit and Northern), and the denial of plaintiff's

motion for new trial, entered by District Judge Carl F. Ingraham, sitting as Wayne County Circuit Court Judge. Plaintiff appeals as of right pursuant to GCR 1963, 806.1.

The facts relating to this appeal bear repetition. During the times in question here, codefendant M & K Development Company (hereafter M & K) was the owner and general contractor of property located in Inkster, Michigan, including the Cherry Plaza Condominium project. Detroit & Northern was the holder of a mortgage on the property. Philip F. Greco Title Company (hereafter Greco) was appointed escrow agent to handle the disbursement of the construction loan from defendant Detroit and Northern to M & K.

In April, 1973, plaintiff contracted with M & K for the construction of a sanitary storm and water system in the project. Plaintiff constructed the system according to the contract, but as a result of the financial condition of M & K, plaintiff was not timely paid the amounts due under the terms of the agreement. The contract required payment of 80% of the obligation when plaintiff's work was finished and the remaining 20% when the job was accepted by the City of Inkster. On July 2, 1973, plaintiff submitted an invoice to M & K for $63,119.52, due and owing on work completed at the time. M & K paid plaintiff $50,000 on August 1, 1973, and another $12,000 approximately 3 months later. Plaintiff was still owed $1,119.52.

Shortly afterward, construction on the project was halted while engineering plans were revised. Plaintiff discontinued work for the space of approximately one year, July, 1973, to July, 1974. Plan revisions were completed May 15, 1974, but plaintiff did not return to work at the time because of dissatisfaction with M & K's failure to

pay according to the contract. At that point, plaintiff would not return to work unless some form of guarantee was forthcoming that when plaintiff completed the job payment would be made. Albert Poole of M & K told plaintiff that Detroit & Northern would be contacted in order to arrange some kind of letter assuring plaintiff of payment. Plaintiff then returned to work.

Poole spoke with Detroit & Northern's representative who agreed to write a letter to plaintiff. However, upon inspection, the first letter sent by Detroit & Northern was unacceptable to plaintiff. Consequently, a second letter issued from Detroit & Northern more specifically stating exactly what monies were owed to plaintiff and noting that, upon successful completion of plaintiff's obligations, "disbursements will be made to the Philip F. Greco Title Company for verification of title, free and clear of any encumbrances in respect to that work completed".

Plaintiff subsequently completed the sanitary storm and water system and obtained the approval of the City of Inkster. A final billing was submitted to M & K in the amount of $36,512.28. Neither M & K nor Detroit & Northern made any payments to plaintiff. Plaintiff then commenced suit against M & K for the amount due and against Detroit & Northern for $32,787.77 on the theory that Detroit & Northern by its letter guaranteed to plaintiff payment of this amount upon successful completion of the work.

The cause was tried before the court upon the narrow issue whether Detroit & Northern guaranteed payment to plaintiff and, if so, whether plaintiff could recover the amount specified in Detroit & Northern's letter. The trial court granted Detroit & Northern's motion for directed verdict after

plaintiff's proofs, indicating in its findings of fact the second letter was not a guarantee the money would be paid to plaintiff but only indication the funds would be paid to Greco, which the court indicated had been done. The trial court thus concluded that Detroit & Northern was not a guarantor and did not make such a representation to plaintiff. Plaintiff made a motion for new trial on grounds that the court's finding the money had been paid by Detroit & Northern to Greco was not substantiated by evidence. Plaintiff argued that such erroneous findings materially affected its substantial rights. The trial court held a hearing on the motion, and acknowledged that contrary evidence appeared in the record to indicate no money had actually been paid by Detroit & Northern to Greco. However, the court denied plaintiff's motion on grounds that the mistake was not a material error which prevented a proper disposition of the case.

On appeal, plaintiff raises several allegations of error. We need address only the major complaint.

The principal question we would address is whether there was a binding promise to plaintiff by Detroit & Northern to pay monies to the title company, and, if so, whether this promise constituted a guarantee contract as a matter of law.

We might observe at the outset that Detroit & Northern's motion for directed verdict should properly have been made as a motion to dismiss.[1]

---

[1] We note the following language in a recent opinion:

"Since this was a nonjury action, the motion for a directed verdict should have properly been called a motion to dismiss. *Dauer v Zabel,* 19 Mich App 198 [172 NW2d 701] (1969); GCR 1963, 504.2. The difference between the two motions is that on the latter motion a judge may weigh the evidence before him, unlike a motion for a directed verdict, where the trial judge's only task is to determine if there is no issue of fact raised by plaintiff's evidence for the jury to decide. *Cullins v Magic Mortgage, Inc,* 23 Mich App 251 [178 NW2d

However, no prejudice resulted to plaintiff by virtue of this procedural mistake and so we will not disturb the determination below on this account. Further, we note that the question of the guarantee contract can be raised on appeal, given that the pretrial results and Detroit & Northern's own trial brief address both the misrepresentation *and* breach of guarantee contract issues. We believe that "the function of the pleadings is to act as a guide rope, not as a snare or a hangman's noose". *Olson v Dahlen,* 3 Mich App 63, 72; 141 NW2d 702 (1966). See also *Nicholson v Han,* 12 Mich App 35, 42, 43; 162 NW2d 313 (1968), *Seaboard Finance Co v Barnes,* 378 Mich 627, 633; 148 NW2d 756 (1967).

Turning now to the principal consideration, we must determine whether the second letter, sent July 17, 1974, constituted a guarantee contract.[2]

532] (1970); *Serijanian v Associated Material & Supply Co,* 7 Mich App 275 [151 NW2d 345] (1967)." *Smith v Department of Street Railways, City of Detroit,* 46 Mich App 291, 292, n 1; 207 NW2d 924 (1973).

[2] The second letter sent by Detroit & Northern reads as follows:

"July 17, 1974

"Mr. Angelo Iafrate
28273 Groesbeck Hwy
Roseville, Michigan

"RE: Cherry Plaza Condominium
Inkster, Michigan

"Dear Mr. Iafrate:

"The intent of this letter is to make you aware that in the financing of the development and further construction of Cherry Plaza Condominium; we have set aside monies in the amount of $32,787.77, according to the terms of the contract, for the completion of the sanitary and storm sewers, and water installation of the above project. The monies will not be released until such time as work is completed and a satisfactory inspection has been made. At such time disbursements will be made to the Philip F. Greco Title Company for verification of title, free and clear of any encumbrances in respect to the work completed.

"Sincerely,

"William V. Pilditch, Jr.
Assistant Vice President"

For purposes of this appeal, a guarantee contract will be understood as an enforceable undertaking or promise by one person collateral to a primary or principal obligation of another which binds the person making the promise to performance of the primary obligation in the event of nonperformance; the secondary party thus becomes primarily responsible for performance. See 38 Am Jur 2d, Guaranty, § 2, pp 997–998. See also *Moore v Capital National Bank of Lansing,* 274 Mich 56, 61–62; 264 NW 288 (1936), *In re Kelley's Estate,* 173 Mich 492, 498; 139 NW 250 (1913). The trial court found that the second letter of July 17, 1974, was not a guarantee that the money would be paid to plaintiff by Detroit & Northern but merely a promise that the funds would be paid to Greco. We find the trial court committed a reversible error of law.

We do not dispute that the trial court properly resolved matters surrounding the extrinsic facts involved in this dispute. Generally, its findings are supported by the evidence and not clearly erroneous. *GRP, Ltd v United States Aviation Underwriters, Inc,* 70 Mich App 671, 677–678; 247 NW2d 583 (1976), *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 389–390; 239 NW2d 380 (1976). However, the matter of whether Detroit & Northern's second letter constituted a guarantee contract is a question involving the intention of the parties and the nature of the promise and so is a question of law. *Griffin Manufacturing Co v Mitshkun,* 233 Mich 640, 642; 207 NW 814 (1926).

This question of law must be tested by whether an objective manifestation of mutual assent appeared. *Stark v Kent Products, Inc,* 62 Mich App 546, 548; 233 NW2d 643 (1975). Did the bank's assurances of availability of funds to pay plaintiff

upon completion of the project reasonably lead plaintiff to believe that Detroit & Northern was promising to guarantee payment in case of M & K's default on its contract? We find the second letter did constitute such a promise.

Often, the language used in commercial guarantees does not reflect the care and precision associated with other written instruments of a more formal character. Consequently, in determining the intention of the parties, greater flexibility must be employed in their interpretation. *Farmers & Mechanics Bank v Kercheval,* 2 Mich 505, 509 (1853). We believe in this case the circumstances and form of the second letter so strongly indicate guarantee that failure to so determine would raise an inference of bad faith on Detroit & Northern's part.[3] However, other than the question concerning the second letter, we do not believe the facts as established indicate bad faith by Detroit & Northern, consequently we would conclude that Detroit & Northern's sending the second letter indicated a good faith intention to guarantee payment of the monies owing to plaintiff rather than a bad faith attempt to mislead him. We find Detroit & Northern did intend to guarantee payment and so find the trial court in error.

Detroit & Northern claims the trial court's finding that plaintiff did not complete the construction work in reliance on the bank's second letter precludes plaintiff from recovery. Normally, reliance

[3] Certainly, plaintiff's request was clear and reasonable, given the fact M & K had already failed to pay plaintiff for work previously done. Thus, at the time of making the request and of receiving Detroit & Northern's letters, plaintiff was not obligated in good faith to complete construction under its contract with M & K due to M & K's material breach. Given this fact, then, an inference might be raised from the surrounding circumstances that Detroit & Northern was aware of M & K's breach and so itself acted in bad faith by attempting to lure plaintiff back to work knowing plaintiff was not obligated to do so. GCR 1963, 820.1(6).

is not necessary to maintain a contract action. See *Chase Manhattan Bank v May,* 311 F2d 117, 120 (CA 3, 1962), *cert den,* 372 US 930; 835 S Ct 874; 9 L Ed 2d 733 (1963). However, we realize reliance may be relevant to proving the elements of consideration and offer and acceptance in this case. See *Mortgage & Contract Co v Linenberg,* 260 Mich 142, 146; 244 NW 428 (1932), *Highland Park v Grant-Mackenzie Co,* 366 Mich 430, 437; 115 NW2d 270 (1962). In the present situation, plaintiff's promise to complete performance was legal detriment and constituted adequate consideration to support Detroit & Northern's promise to pay the monies to Greco pursuant to its guarantee of payment to plaintiff.[4] Further, plaintiff offered to complete construction only in return for assurance of payment. Detroit & Northern accepted this offer by issuing the letter of July 17, 1974. Consequently, while no binding obligation existed prior to that date, Detroit & Northern's letter constituted valid acceptance and its promise, which was enforceable after July 17, 1974. We thus find the necessary elements of a guarantee contract have been met in that plaintiff relied upon Detroit & Northern's assurances of payment in returning to work.

In short, Detroit & Northern guaranteed in its letter of July 17, 1974, to pay plaintiff the amount specified in its letter of July 17, 1974, upon fulfillment of certain conditions. We also find, as did the trial court, that plaintiff satisfactorily fulfilled the first condition stated, *i.e.,* completion of its work on the sanitary and storm sewer systems and

---

[4] We find of no import the fact that plaintiff's performance occurred because of defendants' verbal assurances of a letter before the letter was sent and so before the actual execution of the guarantee promise. *See State National Bank of Albuquerque v Wernicke,* 185 Mich 281; 151 NW 1033 (1915).

acceptance of that work by the City of Inkster. However, proper evidence does not appear as to whether the second condition stated would prevent plaintiff from ultimate recovery under the guarantee contract. Specifically, the second letter provided that the property be "free and clear of any encumbrances in respect to *that work* completed". (Emphasis added.) We thus remand this case in the first instance in order to determine whether any lien existed on the particular work which plaintiff did. The funds will be turned over to Greco and paid to plaintiff less any liens on plaintiff's work. Other liens on the property not related to plaintiff's labor should not be considered relevant to satisfaction of this condition.

Reversed and remanded for proceedings in conformity with this opinion. Costs to be paid by Detroit & Northern.