ARMOUDLIAN v ZADEH

Docket No. 45456. Submitted April 12, 1982, at Detroit.—Decided
     June 8, 1982.

   Defendants and counter-plaintiffs Drs. A. T. Zadeh and Oscar
      Fernando organized a partnership known as the Investment
      Company of Orchard Hills for the purpose of constructing a
      medical center. Plaintiffs and counter-defendants Drs. Cevdet
      Turan, Omer Sonbay, Nurettin Gokcora and Vaughn Armoud-
      lian entered into participation agreements with Drs. Zadeh and
      Fernando through which they became part owners of the
      medical center property allegedly owned by Drs. Zadeh and
      Fernando. The participation agreements called upon each par-
      ticipant to contribute his property interest to the partnership
      organized by Drs. Zadeh and Fernando which would thereby
      own and operate the medical facility. In 1974, Dr. Armoudlian
      commenced the present action against Drs. Zadeh and Fer-
      nando seeking dissolution of the partnership, rescission of the
      participation agreement and return of his original investment
      based upon allegedly fraudulent misrepresentations by Drs.
      Zadeh and Fernando. In 1975, Drs. Turan, Sonbay and Gokcora
      commenced a similar action. Drs. Zadeh and Fernando moved
      for summary judgment in the second action disclaiming any
      improprieties. Drs. Turan, Sonbay and Gokcora moved to
      amend their complaint to add a second count for dissolution
      alleging additional misconduct by Drs. Zadeh and Fernando
      since the creation of the partnership. The Oakland Circuit
      Court, Richard D. Kuhn, J., granted summary judgment for
      Drs. Zadeh and Fernando and, in regard to the motion to

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 5 Am Jur 2d, Arbitration and Award § 11.
[2] 5 Am Jur 2d, Arbitration and Award § 5.
[4] 5 Am Jur 2d, Arbitration and Award § 66.
   60 Am Jur 2d, Partnership § 186.
[5] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§ 27, 36-
   38.
   75 Am Jur 2d, Trial §§ 476-480.
[6] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit § 9.
[7] 61A Am Jur 2d, Pleading § 230 et seq.

amend, instructed the parties to consolidate their claim with that of Dr. Armoudlian in the Oakland Circuit Court, Farrell E. Roberts, J. Judge Roberts, thereafter, ordered Drs. Turan, Sonbay and Gokcora added as plaintiffs in the present action. An amended complaint was filed which contained Dr. Armoudlian's allegations in Count I and the additional claims of Drs. Turan, Sonbay and Gokcora in Count II. Drs. Zadeh and Fernando thereafter filed a counterclaim against Drs. Armoudlian, Turan, Sonbay and Gokcora alleging their failure to pay in accordance with the participation agreements. The latter doctors answered by way of general denials and did not raise any affirmative defenses. Judge Roberts thereafter granted an accelerated judgment in favor of Drs. Zadeh and Fernando as to Count II of the amended complaint based on a lack of jurisdiction over the issues raised relative to the request for dissolution and upon his belief that such issues were subject to a compulsory arbitration provision contained in the partnership agreement. The conterclaim of Drs. Zadeh and Fernando proceeded to a bench trial. Plaintiffs' counsel indicated he intended to prove that the participation agreements had been modified to require no further purchase payments. Defendants' counsel moved to strike such references since the counter-defendants had neglected to plead the issue as an affirmative defense. Defendants' counsel also moved to strike references to an alleged "Acknowledgment to Repurchase" which was purported to absolve Dr. Armoudlian of liability. The trial court declined to rule on the motions to strike, but instead, asked the attorneys to brief the issues raised. Dr. Zadeh then testified regarding the substance of the various participation agreements and the partnership agreement and stated that the participants had failed to pay in accordance with the participation agreements. On cross-examination, Dr. Zadeh could not recall whether he had told the participants that no further payments were expected. Upon counsel's attempt to cross-examine Dr. Zadeh regarding the "Acknowledgment to Repurchase" agreement, defense counsel objected based on the earlier motion to strike. The trial was then adjourned to permit the parties to brief the issue. The trial court, thereafter, issued an opinion allowing the introduction of the "Acknowledgment to Repurchase" document, but not addressing the propriety of the counter-defendants' claim that the participation agreement had been modified. When the trial resumed, Drs. Zadeh and Fernando moved for, and were granted, a directed verdict based on their contention that Dr. Zadeh's testimony established a prima facie case of liability for payment under the participation

agreements. At such time, the plaintiffs had not completed their cross-examination of Dr. Zadeh and had not yet had the opportunity to offer any evidence. Drs. Turan, Sonbay and Gokcora appeal from the order of the trial court dismissing by accelerated judgment Count II of their amended complaint and from the trial court's grant of a directed verdict in favor of defendants and counter-plaintiffs with respect to the counter-claim. *Held:*

1. The trial court correctly granted accelerated judgment with regard to the claims for dissolution. There was an arbitration agreement between the parties, the dispute is arguably covered by the contract and the arbitration clause, and the dispute is not expressly exempted from arbitration by the terms of the agreement.

2. Arbitration is an acceptable forum for resolving partnership dissolution disputes.

3. The motion for a directed verdict below was incorrectly termed one for a "directed verdict". In a bench trial the proper motion should have been one for involuntary dismissal under GCR 1963, 504.2.

4. The trial court's ruling granting a directed verdict cannot be justified under GCR 1963, 504.2 because the counter-defendants were not given an opportunity to present evidence as required by the rule.

5. Even if the motion for a directed verdict is treated as one for summary judgment for failure to state a valid defense under GCR 1963, 117.2(2) the counter-defendants' defenses pled were not so clearly untenable, as a matter of law, that no factual development could possibly deny the counter-plaintiffs' right to recovery. The judgment in favor of the counter-plaintiffs must therefore be reversed.

6. The counterclaim itself is subject to the mandatory arbitration clause contained within the partnership agreement. On remand, the counterclaim shall be referred to arbitration along with the plaintiffs' claim for dissolution.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. ARBITRATION — CONTRACTS — ARBITRABILITY.

The arbitrability of an issue is ascertained through a three-stage inquiry: (1) is there an arbitration agreement between the parties? (2) is the dispute in question, on its face, arguably covered by the contract? and (3) is the dispute expressly exempt from arbitration by the terms of the agreement?

2. ARBITRATION — ARBITRABILITY.

Michigan's courts have expressed a long-standing preference for arbitration as a means of resolving disputes; any doubts regarding the arbitrability of an issue must be resolved in favor of arbitration.

3. ARBITRATION — AGREEMENTS TO ARBITRATE.

A claim which is, on its face, governed by an arbitration agreement should be decided by arbitration unless strong evidence establishes that it is outside the arbitration clause.

4. PARTNERSHIP — UNIFORM PARTNERSHIP ACT — DISSOLUTION DISPUTES — ARBITRATION.

The provision of the Uniform Partnership Act providing for court jurisdiction over partnership dissolutions is not intended to be exclusive; arbitration is also an acceptable forum for the resolution of partnership dissolution disputes (MCL 449.32; MSA 20.32).

5. TRIAL — MOTIONS — DIRECTED VERDICT — BENCH TRIALS — INVOLUNTARY DISMISSALS — COURT RULES.

A motion for a directed verdict is improper in a trial without a jury; the analogous motion in a bench trial is one for involuntary dismissal (GCR 1963, 504.2).

6. COURT RULES — INVOLUNTARY DISMISSALS — EVIDENCE.

The court rule regarding involuntary dismissals does not contemplate the granting of a judgment dismissing an action in favor of a party prior to an opportunity for the opposing party to present evidence in his own defense (GCR 1963, 504.2).

7. JUDGMENTS — SUMMARY JUDGMENTS — FAILURE TO STATE DEFENSE — PLEADINGS — COURT RULES.

A motion for summary judgment for failure to state a valid defense tests the sufficiency of the defendant's pleadings and must be considered only on the basis of the pleadings; the proper standard is whether the defenses pled are so clearly untenable as a matter of law that no factual development could possibly deny the plaintiff's right to recovery (GCR 1963, 117.2[2]).

*Curtis G. Rundell, II, P.C.,* for Dr. Armoudlian.

*Dahlberg, Mallender & Gawne* (by *J. C. Wagner),* for Dr. Turan.

*Fox & Fletcher, P.C.* (by *Thomas G. Cardelli*), for Dr. Sonbay.

*Larson & Harms, P.C.* (by *David M. Tyrpak*), for Dr. Gokcora.

*Leonard A. Siudara, P.C.* (by *Susan E. Morrison*), for Dr. Zadeh and the Investment Company of Orchard Hills.

*Nederlander, Dodge & McCauley, P.C.* (by *Tracy L. Allen*), for Dr. Fernando.

Before: N. J. KAUFMAN, P.J., and V. J. BRENNAN and BEASLEY, JJ.

N. J. KAUFMAN, P.J. Plaintiffs and counter-defendants Drs. Cevdet Turan, Omer K. Sonbay and Nurettin Gokcora appeal as of right from an order of the trial court dismissing by accelerated judgment Count II of their amended complaint,[1] and from the trial court's order directing a verdict in favor of defendants and counter-plaintiffs with respect to the counterclaim.

In 1972, defendant Drs. A. T. Zadeh and Oscar U. Fernando organized a partnership known as Investment Company of Orchard Hills. The purpose of that undertaking was the construction of a medical center on a parcel of property located in Oakland County. In October and November of 1973, Drs. Zadeh and Fernando offered Drs. Turan, Sonbay and Gokcora and Dr. Vaughn Armoudlian the opportunity to participate in the project. Each of the latter doctors entered into a participation

---

[1] Count I of the amended complaint concerned only plaintiff and counter-defendant Vaughn M. Armoudlian. That count was disposed of below by summary judgment; Dr. Armoudlian's appeal from the trial court's order of summary judgment has been dismissed by stipulation of the parties.

agreement through which they became part owners of the medical center property. The agreements divided ownership of the property into 20 units of participation. Drs. Zadeh and Fernando retained 15 units, or 75% interest in the property. Drs. Turan, Sonbay and Gokcora each purchased one unit of participation, while Dr. Armoudlian purchased two units. Each unit of participation cost $60,000, consisting of a $25,000 down payment and the assumption of a $35,000 pro rata share of a mortgage on the property. The purchasers paid $10,000 in cash toward their down payments on each unit and agreed to pay the balance in monthly installments at 8% interest. The participation agreements indicated that at the time of their execution, Drs. Zadeh and Fernando were the owners of the involved property.

In addition, the participation agreements called upon each participant to contribute his property interest to a general partnership, which would thereby own and operate the medical facility. Pursuant to the participation agreements, the parties entered into a partnership agreement. This second agreement provided Drs. Zadeh and Fernando each with a 35% interest in the partnership. Drs. Turan, Sonbay and Gokcora were each provided with a 5% interest in the partnership, while Dr. Armoudlian received a 10% interest.[2]

In 1974, Dr. Armoudlian commenced the present action for dissolution of the partnership, rescission of his participation agreement and return of his initial $20,000 investment. Dr. Armoudlian alleged that he was induced to enter into the participation and partnership agreements by the fraudulent misrepresentations of Drs. Zadeh and Fernando.

[2] The final 5% interest in the partnership went to Dr. Naci Karca, who is not involved in the present litigation.

Specifically, he claimed that the two doctors were not actually the owners of the property at the time the agreements were executed but that they utilized the investment funds to subsequently acquire the land. Dr. Armoudlian's case was assigned to Oakland County Circuit Court Judge Farrell E. Roberts.

In 1975, a similar complaint was filed by Drs. Turan, Sonbay and Gokcora and assigned to Oakland County Circuit Court Judge Richard D. Kuhn. The defendants filed a motion for summary judgment disclaiming any improprieties. While they admitted that they were not the record owners of the property when the agreements were executed, they contended that it was only because of a series of conveyances required by various lending institutions, and that any defect had been cured by the time the property was conveyed to the partnership. Drs. Turan, Sonbay and Gokcora moved to amend their complaint to add a second count for dissolution alleging additional misconduct by Drs. Zadeh and Fernando since the creation of the partnership. Judge Kuhn granted summary judgment. With respect to the motion to amend, he instructed the parties to consolidate their claim with that of Dr. Armoudlian before Judge Roberts. On January 21, 1977, Judge Roberts ordered Drs. Turan, Sonbay and Gokcora added as plaintiffs in the instant case. An amended complaint was filed, which contained in Count I Dr. Armoudlian's allegations, and in Count II the additional claims of Drs. Turan, Sonbay and Gokcora.

On February 17, 1977, Drs. Zadeh and Fernando filed a counterclaim against Drs. Armoudlian, Turan, Sonbay and Gokcora. They alleged that each of the participants had failed to pay any of the purchase costs beyond the initial cash payments.

The plaintiffs and counter-defendants answered by way of general denials, and did not raise any affirmative defenses.

On May 10, 1979, the trial court granted accelerated judgment in favor of the defendants as to Count II of the amended complaint. The basis of the judgment was that the issues raised relative to the request for dissolution were subject to a compulsory arbitration provision contained within the partnership agreement. The trial court, therefore, concluded that it lacked jurisdiction to hear those claims.

Defendants' counterclaim proceeded to bench trial on May 17, 1979. In his opening statement, counsel for Drs. Turan, Sonbay, Gokcora and Armoudlian indicated that he intended to prove that the original participation agreements were modified to provide that no further purchase payments would be required. Defense counsel immediately moved to strike any reference to possible subsequent agreements, claiming that the issues could not be raised at trial since the counter-defendants had neglected to plead the issue as an affirmative defense. Counsel also moved to strike references to an alleged agreement entitled "Acknowledgment to Repurchase", which was purported to absolve Dr. Armoudlian of liability. The trial court declined to rule on the motions to strike, but instead advised the attorneys to brief the issues raised.

Dr. Zadeh then took the witness stand. He testified on direct examination concerning the substance of the various participation agreements and the partnership agreement. He stated that the participants had failed to pay any purchase costs beyond the initial cash investments. On cross-examination, Dr. Zadeh stated that he could not recall whether he had told the participants that no

further payments were expected. When counsel attempted to cross-examine Dr. Zadeh with regard to the "Acknowledgment to Repurchase" agreement an objection was raised based on the earlier motion to strike. Trial was then adjourned to permit the parties to brief the issue.

On July 9, 1979, the trial court issued an opinion ruling that it would not be unfairly prejudicial to permit introduction of the "Acknowledgment to Repurchase" document. The opinion did not address the propriety of the counter-defendants' claim that the participation agreement was modified by the parties' subsequent conduct. When trial resumed on December 15, 1980, counsel for Drs. Zadeh and Fernando moved for a "directed verdict" based on their contention that Dr. Zadeh's testimony had established a prima facie case of liability for payment under the participation agreements. The trial court granted the motion in spite of the fact that the counter-defendants, Drs. Turan, Sonbay, Gokcora and Armoudlian, had not yet completed their cross-examination of Dr. Zadeh and had not yet had the opportunity to offer any evidence.

On appeal, Drs. Turan, Sonbay and Gokcora first argue that the trial court erred by ruling that their suit for dissolution based upon the misconduct of Drs. Zadeh and Fernando (Count II of the amended complaint) was subject to arbitration. In Count II, plaintiffs requested dissolution based upon violations of the partnership agreement by Drs. Zadeh and Fernando. They alleged:

"17. That the defendants have not performed all of the terms and agreements of said agreement in that the defendants:
"(a) have failed, neglected and refused to provide all

necessary accountings and free access to the books of the partnership;

"(b) have held partnership meetings without notice to the plaintiffs;

"(c) have conducted partnership business without notice to the plaintiffs to the detriment of the plaintiffs' interest in the partnership."

The partnership agreement contained the following arbitration clause:

"XX

"ARBITRATION

"*If any of the Partners shall disagree on the terms and conditions and/or interpretation of this agreement, such disagreement shall be promptly submitted to and heard and determined by one (1) arbitrator* upon request of such Partner. If the Partner shall object to the arbitrator so appointed, the Managing Partner shall seek appointment of one (1) arbitrator to be appointed by the American Arbitration Association from its Metropolitan Detroit Chapter. If the appointed arbitrator is unacceptable to any of the Partners, the Managing Partner shall request another arbitrator and shall continue to seek an arbitrator until one shall be selected who is agreeable to all the Partners concerned, but in no event shall he be required to request more than three (3) arbitrators.

"The determination of the arbitrator so appointed pursuant to this Article shall be binding upon both the Partner requesting arbitration and on the Partnership or its Partners as the case may be. Any expenses or costs incurred in connection with such arbitration shall be divided equally and paid one-half (1/2) by the Partner causing the matter to be submitted to arbitration, and one-half (1/2) by the Partnership." (Emphasis added.)

The arbitrability of an issue is ascertained through a three-stage inquiry. The first consideration is whether there is an arbitration agreement

between the parties. Next, we determine whether the dispute in question is arguably covered by the contract and the arbitration clause. Finally, we look to whether the dispute is expressly exempt from arbitration by the terms of the agreement. *American Fidelity Fire Ins Co v Barry,* 80 Mich App 670, 674-676; 264 NW2d 92 (1978).

Here, the parties do not dispute the existence of the partnership agreement containing the quoted arbitration clause. Moreover, it is plain that the agreement does not expressly exempt a dispute from arbitration when the relief requested is dissolution of the partnership. Therefore, the crucial stage of our inquiry is whether the dispute in question, on its face, is arguably covered by the partnership agreement and the arbitration clause. In this regard, any doubts must be resolved in favor of arbitration, in keeping with our long-standing preference for arbitration as a means of resolving disputes. *Kaleva-Norman-Dickson School Dist No 6, Counties of Manistee, Lake & Mason v Kaleva-Norman-Dickson School Teachers' Ass'n,* 393 Mich 583, 592; 227 NW2d 500 (1975); *American Fidelity Fire Ins Co v Barry, supra.* If a claim is, on its face, governed by an arbitration agreement, it should be decided by arbitration unless strong evidence establishes that it is outside the arbitration clause. *Id.*

Here, the claim for dissolution by Drs. Turan, Sonbay and Gokcora was based upon several alleged breaches of the partnership agreement by Drs. Zadeh and Fernando. The dispute, in essence, is one concerning "the terms and conditions and/or interpretation" of the partnership agreement, and, as such, it is within the scope of the arbitration clause. Drs. Turan, Sonbay and Gokcora contend that Drs. Zadeh and Fernando failed to pro-

vide necessary accountings and free access to partnership books, held partnership meetings without notice, and conducted partnership business without notice and to the detriment of the plaintiffs. The failure to provide accountings and free access to partnership books, if true, would be in direct violation of portions of the partnership agreement.[3] Similarly, the contention that Drs. Zadeh and Fernando held partnership meetings and conducted business without notice to the plaintiffs requires interpretation of the provisions of the partnership agreement purporting to give Dr. Zadeh exclusive authority over the operation of the partnership's medical clinic. We conclude that the dispute is one that, on its face, is arguably within the intended scope of the contract and its arbitration clause.

Drs. Turan, Sonbay and Gokcora also contend that, as a matter of law, the dissolution of a partnership may not be a subject of arbitration. This argument appears to be premised upon the fact that the Uniform Partnership Act, MCL 449.1 et seq.; MSA 20.1 et seq., provides for court jurisdiction over partnership dissolution.[4] We view this

---

[3] The partnership agreement provides in pertinent part:

"XI·

"BOOKS OF ACCOUNT

"The Partnership books and records and all letters, papers, and documents belonging to the Partnership shall be kept at the principal office of the Partnership, and each Partner shall at all times have free access to examine the books and records. The books shall be maintained on the cash method of accounting according to generally accepted accounting principles applied on a consistent basis from year to year and shall be closed and balanced at the end of each calendar year. After the close of each year, a complete accounting of the affairs of the Partnership of the prior year shall be furnished to each Partner by the accountant then servicing the Partnership. In addition, each Partner shall receive such information as each Partner may require for the purpose of preparing his individual income tax return for any calendar year."

[4] See MCL 449.32; MSA 20.32.

contention as faulty inasmuch as there is nothing within the act to indicate that such jurisdiction is intended to be exclusive. Under MCL 449.31; MSA 20.31, dissolution by court decree is only one of a number of methods or causes of dissolution. A partnership may be dissolved pursuant to the mutual agreement of the partners. See, *e.g., Brand v Elledge,* 101 Ariz 352; 419 P2d 531 (1966). If partners are permitted to dissolve and terminate a partnership through their own private settlement and accounting, it follows that they may agree to an alternative nonjudicial mechanism to accomplish the same end. *Cf. Norton v Hayden,* 129 Mich 374; 88 NW 876 (1902). Arbitration is an acceptable forum for resolving partnership dissolution disputes. The trial court correctly granted accelerated judgment with regard to the claims for dissolution.

The second appellate issue raised by Drs. Turan, Sonbay and Gokcora relates to the counterclaim filed on behalf of the defendants. The doctors argue that the trial court erred by granting a directed verdict in favor of the defendants.

Initially, we note that because the matter was tried without a jury the motion below was incorrectly termed one for "directed verdict". The analogous motion in a bench trial is one for involuntary dismissal under GCR 1963, 504.2. *Angelo Iafrate Co v M & K Development Co,* 80 Mich App 508; 264 NW2d 45 (1978). GCR 1963, 504.2 provides:

".2 *Involuntary dismissal; Effect.* For failure of the plaintiff to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. *After the plaintiff has completed the presentation of his evidence to the court in any action tried without a jury, the defendant,*

*without waiving his right to offer evidence in the event
the motion is not granted, may move for a dismissal on
the ground that upon the facts and the law the plaintiff
has shown no right to relief. Thereupon, the court as
trier of the* facts may determine them and render
judgment against the plaintiff, or may decline to render
any judgment until the close of all the evidence. If the
court renders judgment on the merits against the plain-
tiff, the court shall make findings as provided in Rule
517. Unless the court in its order for dismissal other-
wise specifies, a dismissal under this subdivision and
any dismissal not provided for in this rule, other than a
dismissal for lack of jurisdiction, operates as an adjudi-
cation upon the merits." (Emphasis added.)

The language of the rule indicates that it does not
contemplate judgment in favor of a party prior to
an opportunity for the opposing party to present
evidence. *Cf. DeNike v Otsego County,* 45 Mich
App 711, 714, fn 1; 206 NW2d 786 (1973) (motion
to dismiss by defendant only appropriate at the
close of plaintiff's proofs). Here, judgment was
granted after the counter-plaintiffs had presented
Dr. Zadeh as a witness. The counter-defendants
were never provided the opportunity to complete
cross-examination of Zadeh, let alone the opportu-
nity to present proofs in their own defense. Be-
cause of this defect, the trial court's ruling cannot
be justified under GCR 1963, 504.2.

Even if, as the counter-plaintiffs now argue, the
motion should be treated as one for summary
judgment for failure to state a valid defense, GCR
1963, 117.2(2), judgment in favor of the counter-
plaintiffs was improper. A motion for summary
judgment under GCR 1963, 117.2(2) tests the suffi-
ciency of a defendant's pleadings and must be
considered only on the basis of the pleadings. The
proper standard is whether the defenses pled are

so clearly untenable, as a matter of law, that no factual development could possibly deny the plaintiff's right to recovery. *Bob v Holmes,* 78 Mich App 205, 211; 259 NW2d 427 (1977). Here, the counter-defendants denied breaching the participation agreements, a claim that, if true, could provide a defense to counter-plaintiffs' claim. Moreover, the counter-plaintiffs were put on notice by the amended complaint of Drs. Turan, Sonbay and Gokcora that the latter doctors contended that counter-plaintiffs had breached the underlying partnership agreement. They alleged at trial that the breach terminated the agreement and absolved them of the duty to continue their investment. We cannot hold their claims to be so untenable, as a matter of law, to preclude a factual development that would deny counter-plaintiffs recovery. The trial court's ruling, even when considered under GCR 1963, 117.2(2), was without justification. The resulting judgment in favor of counter-plaintiffs must therefore be reversed.

It is apparent from our review of the record that the defenses raised by Drs. Turan, Sonbay and Gokcora to the counterclaim also involve interpretation of the terms and conditions of the partnership agreement. Presumably, the resolution of both matters within the same forum will eliminate the possibility of inconsistent results. Consequently, the counterclaim itself is also subject to the mandatory arbitration clause contained within the partnership agreement. On remand, the counterclaim shall be referred to arbitration along with plaintiffs' claim for dissolution.

Affirmed in part, reversed in part. Remanded for further proceedings consistent with this opinion. No costs, neither party having prevailed in full.