WEBB v SMITH (AFTER REMAND)

Docket No. 150425. Submitted December 8, 1993, at Lansing. Decided
April 18, 1994, at 9:20 A.M.

Donald W. and Arlene S. Webb and Keith Thurlow brought an
action in the Midland Circuit Court against Warren R. and
Faye C. Myhra Smith, seeking injunctive relief with regard to
the enforcement of a certain negative reciprocal easement
applicable to parcels of property owned by the parties that
provided that no dwelling could be placed closer than twenty
feet from the front lot line and not more than one building
could be used for dwelling purposes on each lot. The court, Paul
J. Clulo, J., entered a judgment for the defendants, finding that
they did not have actual or constructive notice of the restric-
tions and that there was no reciprocal negative easement. The
plaintiffs appealed and the Court of Appeals, HOOD, P.J., and
WEAVER and MARILYN KELLY, JJ., reversed and remanded the
matter to the trial court in an unpublished opinion per curiam
decided May 8, 1991 (Docket No. 117920). On remand, the trial
court again concluded that the restrictions were not violated
and entered a judgment for the defendants. The Webbs ap-
pealed.

After remand, the Court of Appeals held:

1. The trial court erred in finding that the defendants' home
was in compliance with the restrictions, that "front lot line" in
the restrictions referred to the shore of the lake as opposed to
the subdivision survey line, and that the term "lot" referred to
any parcel conveyed by the developer.

2. The court erred in determining that the testimony of the
subdivision's developer was contradictory and, thus, suspect.
The overall thrust of his testimony was that the survey line
was the proper point of reference.

3. The court erred in construing the setback restriction in an
manner contrary to the intent of the drafter of the restrictive

REFERENCES

Am Jur 2d, Appeal and Error §§ 822, 839; Covenants, Conditions,
and Restrictions §§ 237, 267; Easements and Licenses §§ 8, 97.

Multiple residence as violation of restrictive covenant. 14 ALR2d
1376.

covenant. The drafter's intent to provide an unobstructed view of the lake for all the residents is accomplished by an interpretation finding the survey line to be the proper point of reference.

4. The court clearly erred with regard to its finding regarding the one-home-per-lot restriction. The clear language of the restriction prevents the construction of more than one dwelling on each lot. The defendants own the westerly one-half of lot 6. There is already a dwelling on the easterly one-half of lot 6. Any attempt to build on the defendants' one-half, without having title to a full adjacent lot, would be a direct violation of the restriction.

Reversed and remanded.

1. APPEAL — EQUITY.

The Court of Appeals, when reviewing equitable actions, reviews de novo the equitable decision and reviews for clear error the findings of fact in support of the equitable decision rendered.

2. APPEAL — CLEAR ERROR.

A trial court's findings are considered to be clearly erroneous where the Court of Appeals is left with the definite and firm conviction that a mistake has been made.

3. DEEDS — RESTRICTIVE COVENANTS — JUDICIAL CONSTRUCTION.

A restrictive covenant must be construed in connection with the surrounding circumstances, which the parties are supposed to have had in mind when they entered into the covenant, the location and character of the entire tract of land, the purpose of the restriction, whether it was for the sole benefit of the grantor or for the benefit of the grantee and subsequent purchasers, and whether it was in pursuance of a general building plan for the development and improvement of the property; where no ambiguity is present, it generally is improper to enlarge or extend the restrictive covenant by judicial interpretation.

4. DEEDS — RECIPROCAL NEGATIVE EASEMENTS.

Where an owner of several real estate lots has burdened the lots with reciprocal negative easements, the lots, when later sold to separate parties, remain burdened with the easements, and the right to demand observance thereof passes to each purchaser with notice of the easements.

*Lambert, Leser, Dahm, Cook, Schmidt & Giunta, P.C.* (by *Peter F. Dahm*), for the plaintiffs.

*Currie & Kendall, P.C.* (by *Daniel J. Cline* and *Jeffrey N. Dyer*), for the defendants.

AFTER REMAND

Before: TAYLOR, P.J., and REILLY and M. J. TAL-BOT,* JJ.

M. J. TALBOT, J. Plaintiffs appeal a March 2, 1992, Midland Circuit Court judgment entered in favor of defendants involving a dispute over application of a negative reciprocal easement to defendants' newly constructed home in the Thomas Shores Subdivision. This is the second time the parties have been before this Court with respect to the property at issue. See *Webb v Smith,* unpublished opinion per curiam of the Court of Appeals, decided May 8, 1991 (Docket No. 117920). We reverse and remand to the trial court, where it shall impose the appropriate remedy.

The relevant facts concerning this appeal are essentially undisputed. By warranty deed, defendants acquired a piece of property described as the "Westerly Half (½) of Lot 6" of the Thomas Shores Subdivision. When defendants began to construct a home on the property, plaintiff Keith Thurlow objected because the house would block his view of the lake around which a number of the homes were situated.[1] Thurlow claimed that the home was designed in violation of the twenty-foot setback restriction and the one-home-per-lot restriction appearing in the deeds for lots in the subdivision. At the time Thurlow first voiced his objection to the construction, the township had already issued a permit and the foundation of the home

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Although he was named in the original complaint for injunctive relief, Mr. Thurlow is no longer a party to this action.

was complete. When Thurlow's attempts to prevent further building through the township failed, Thurlow and the Webbs (owners of lot 7 in the subdivision) filed a complaint for injunctive relief.

A bench trial was conducted and the court granted judgment in favor of defendants because it determined that defendants did not have actual or constructive notice of the restrictions and that there was no reciprocal negative easement preventing defendants from pursuing their building plans. This Court disagreed and concluded that defendants had constructive notice of the restrictions. See *Webb, supra* at 2. This Court reversed and remanded to the trial court for a determination whether defendants' home was in violation of the restrictions. On the basis of the testimony presented at the prior bench trial and the arguments of counsel, the court concluded that the home did not violate either of the restrictions and, once again, entered a judgment in favor of defendants.

On appeal, plaintiffs argue that the trial court erred in finding that defendants' home was in compliance with the restrictions. We agree.

The restriction at issue states as follows:

> No building or dwelling shall be placed closer than 20 feet from the *front lot line,* and not more than one building shall be used for dwelling purposes on each *lot.* [Emphasis added.]

At issue on remand was the interpretation of "front lot line," and "lot." The court found that the term "front lot line" referred to the shore of the lake as opposed to the subdivision plat line (survey line) and that the term "lot" referred to any parcel conveyed by the developer. On the basis of these interpretations, the court concluded that

defendants' home was in conformity with the restrictions.

When reviewing equitable actions, this Court employs review de novo of the decision and review for clear error of the findings of fact in support of the equitable decision rendered. *Attorney General v Lake States Wood Preserving, Inc,* 199 Mich App 149, 155; 501 NW2d 213 (1993); *Badon v General Motors Corp,* 188 Mich App 430, 438; 470 NW2d 436 (1991). A trial court's findings are considered clearly erroneous where we are left with a definite and firm conviction that a mistake has been made. *Lake States, supra* at 159.

In this case, we are left with a definite and firm conviction that the trial court made a mistake with respect to its interpretation of the front lot line requirement. Plaintiffs claimed that the front lot line requirement meant that no home could be set back less than twenty feet from the survey line. Conversely, defendants advocated that the term meant that no home could be less than twenty feet from the edge of the water. Were plaintiffs' interpretation to be correct, defendants' dwelling would be in violation of the minimum setback requirement.

At the original bench trial, Leonard Thomas, the developer, testified that the survey line was the appropriate point of reference with respect to the front lot line and that he believed defendants' home was constructed in violation of that restriction. Thomas further testified that the reason for the restriction was that each lot owner would have an unobstructed view of the lake. Thomas disputed that the setback reference should be to the water line because that line fluctuated with the weather. Testimony from at least one other witness revealed that he was required to modify his building

plans because they were in violation of the setback requirement.

The majority of remaining testimony related to the issue of notice and the manner in which this dispute developed. At the conclusion of the trial, the court found that Thomas' testimony was suspect because it was contradictory. Specifically, the court relied upon a portion of Thomas' testimony where he stated that the owners could set back any place they wanted to setback. However, our review of the testimony in the context in which it was given indicates that the court made a mistake in discrediting Thomas. The relevant testimonial exchange between plaintiff's counsel and Thomas was as follows:

> *Q:* And you hoped by setting a setback, that complying with that setback you would generally have everybody in a line down the shore?
> *A:* Yup, unless they preferred to set back further.
> *Q:* They could set back further?
> *A:* They could set back anyplace they wanted to.
> *Q:* Do you know if anybody has set back further?
> *A:* Oh, definitely so, myself for one, a whole bunch back.

Considered in its context, this testimony is not contradictory to Thomas' testimony that the setback requirement was in reference to the survey line.

While it is true that Thomas sometimes referred to the water's edge as the point from which the setback was to be measured, the overall thrust of his testimony was that the line had to be stable and that the survey line was the proper point of reference. Although the plat description contains language indicating that the plat covers all land to the water's edge, that language is not tantamount

to conveying language, does not appear in the deeds or the text of the restriction, and is merely a general description of the area surrounding the subdivision.

In interpreting a restrictive covenant, our Supreme Court stated that the covenant should be

"construed in connection with the surrounding circumstances, which the parties are supposed to have had in mind at the time they made it, the location and character of the entire tract of land, the purpose of the restriction, whether it was for the sole benefit of the grantor or for the benefit of the grantee and subsequent purchasers, and whether it was in pursuance of a general building plan for the development and improvement of the property." [*Brown v Hojnacki*, 270 Mich 557, 560-561; 259 NW 152 (1935), quoting *Library Neighborhood Ass'n v Goosen*, 229 Mich 89; 201 NW 219 (1924).]

Inasmuch as the clear and uncontradicted intent of the drafter was to provide an unobstructed view of the lake for all the residents, the restriction must be interpreted to accomplish that purpose. See *West Bloomfield Co v Haddock*, 326 Mich 601, 611; 40 NW2d 738 (1950). The uncontroverted testimony was that defendants' home obstructed the view of some of the residents. We are left with the definite and firm conviction that the court made a mistake in construing the restriction in a manner contrary to the intent of the drafter.

We also conclude that the finding with respect to the one-home-per-lot restriction was clearly erroneous. The clear language of the restriction states that "not more than one building shall be used for dwelling purposes on each lot." The trial court adopted defendants' strained interpretation of this provision by concluding that the term "lot"

referred to "a parcel conveyed by the developer." However, the surveys that are part of the record and the clear language of the deeds through which defendants came into possession of this parcel indicate that defendants' parcel was "one-half" of a lot. Were the court's interpretation to be upheld, there is nothing to prevent the developer from further subdividing existing parcels to which he has title and permitting construction of new homes.[2] See, e.g., *Buchanan v Goode,* 15 Mich App 488; 166 NW2d 656 (1969).

The law is settled that

> [w]here a common owner had burdened all lots retained by him with reciprocal negative easements, such lots, when later sold to separate parties, remained burdened therewith, and right to demand observance thereof passed to each purchaser with notice of the easement. [*Stark v Robar,* 339 Mich 145, 151; 63 NW2d 606 (1954).]

While the trial court may be correct that other lot owners had divided certain lots to commingle them with whole lots, there is no evidence in the record to suggest that residents of the subdivision fragmented whole lots for the purpose of adding additional dwellings. In this case, there is no dispute that defendants received the westerly one-half of lot 6. According to the record, there was already a dwelling on the easterly one-half of lot 6. Thus, any attempt to build upon the westerly one-half of lot 6, without already having title to a full lot adjacent thereto, would be a direct violation of the restriction.

---

[2] Thomas testified that he retained ownership of two of the sixty-two lots in the subdivision. Although Thomas opined that the construction of the home on the western portion of lot 6 was not in violation of the restriction, that testimony is suspect because it was Thomas who originally split the lots and conveyed the portions.

The general rule with regard to interpretation of restrictive covenants is that where no ambiguity is present, it is improper to enlarge or extend the meaning by judicial interpretation. *Sampson v Kaufman,* 345 Mich 48, 50; 75 NW2d 64 (1956); *Brown, supra* at 560; *Borowski v Welch,* 117 Mich App 712, 716; 324 NW2d 144 (1982). The clear language of the restriction prevents the construction of more than one dwelling per lot and it appears from this record that all the residents have complied with that restriction. See *Buchanan, supra* at 489. While it is true that lot 6 of the subdivision appears to be much larger than each of the other lots, that fact has little bearing on the interpretation of the restrictions. Had the original intent been to permit more than one dwelling on this lot, further subdivision would have been done in advance of the restrictions taking effect.

In the landmark case of *Sanborn v McLean,* 233 Mich 227, 229-230; 206 NW 496 (1925), the Court stated:

> If the owner of two or more lots, so situated as to bear the relation, sells one with restrictions of benefit to the land retained, the servitude becomes mutual, and, during the period of restraint, the owner of the lot or lots retained can do nothing forbidden to the owner of the lot sold. For want of a better descriptive term this is styled a reciprocal negative easement. It runs with the land sold by virtue of express fastening and abides with the land retained until loosened by expiration of its period of service or by events working its destruction. It is not personal to owners but operative upon use of the land by any owner having actual or constructive notice thereof. It is an easement passing its benefits and carrying its obligations to all purchasers of land subject to its affirmative or negative mandates.

The policy surrounding reciprocal negative easements is firmly entrenched in the law of this state. The effect of a refusal to enforce the easement provisions because of one owner's plight would be to dilute their strength and work hardship on the other benefited and burdened property owners.

We sympathize with the court's hesitation in granting the injunctive relief requested by plaintiffs. However, the clear rule of law is that the restrictions are to be enforced for the benefit of the entire subdivision and its residents. We note that there is at least some indication that defendants improvidently continued with construction of their home with full knowledge of the nature of the dispute at hand. In that regard, defendants did so at their own peril. This matter is remanded to the trial court, which shall impose the appropriate equitable or legal remedy. Should plaintiffs be willing to forgo the most harsh remedy in favor of other avenues of relief, they are encouraged to do so.

Reversed and remanded for further proceedings. We do not retain jurisdiction.