WILLIAMSTOWN TOWNSHIP v HUDSON

Docket No. 321306. Submitted May 5, 2015, at Lansing. Decided May 19, 2015. Approved for publication July 2, 2015, at 9:10 a.m.

Williamstown Township brought a nuisance action in the Ingham Circuit Court against Jeremiah Hudson for operating a commercial farm on his residential property in violation of local zoning ordinances. The court, Rosemarie E. Aquilina, J., issued an order for defendant to show cause that an injunction should not be issued. In response, defendant moved for summary disposition under MCR 2.116(C)(8), arguing that the local ordinances at issue were preempted by the Right to Farm Act (RTFA), MCL 286.471 *et seq.*, which shielded his farm from plaintiff's lawsuit. Plaintiff also moved for summary disposition on the grounds that the RTFA was inapplicable and that the farm was not complying with generally accepted agricultural and management practices (GAAMPs). Defendant responded, arguing in part that the farm had received tentative approval of its operations under the Michigan Agricultural Environmental Assurance Program (MAEAP), which he alleged was equivalent to the GAAMPs. Before the hearing on these motions, plaintiff lodged a complaint with the Michigan Department of Agriculture and Rural Development (MDARD), alleging that defendant's farm was a source of noise, odor, potential manure runoff, and water pollution. An MDARD investigation indicated several concerns related to manure discharges, manure runoff, and erosion, and the investigator directed defendant to develop a manure management system plan. Although defendant did submit a plan, MDARD deemed it insufficient. At the hearing on the motion for summary disposition, defendant and his wife testified that after making several changes to their farm, their manure removal system was in compliance with the GAAMPs. Plaintiff moved for a directed verdict under MCR 2.516 or for involuntary dismissal under MCR 2.504(B)(2). In its opinion and order, the court granted plaintiff's motions under MCR 2.116(C)(9) and (10), MCR 2.504(B)(2), and MCR 2.517, and denied defendant's motion under MCR 2.116(C)(8). The court confirmed that the farm was a commercial farming operation under the RTFA, but rejected defendant's contention that GAAMP verification was unnecessary if MAEAP

certification was obtained, ruling instead that defendant had failed to satisfy all applicable GAAMPs, that the testimony of defendant's wife that the farm had done so lacked credibility, and that defendant had therefore failed to establish an affirmative defense under the RTFA. The court also ruled that plaintiff had proved a nuisance per se, and it enjoined defendant's farming activities. Defendant's motion for reconsideration was denied. Defendant appealed.

The Court of Appeals *held*:

1. The trial court properly granted plaintiff's motions under MCR 2.504(B)(2). In reaching its conclusions, the court cited MCR 2.116(C)(8), (9), and (10); MCR 2.504(B)(2); and MCR 2.517. Motions for summary disposition under either MCR 2.116(C)(8) or (C)(9) test the legal support for a claim, either on the pleadings alone under (C)(8) or on the sufficiency of a party's defense under (C)(9). In contrast, motions for summary disposition under MCR 2.116(C)(10) and those for directed verdict under MCR 2.516 or involuntary dismissal under MCR 2.504(B)(2) test the factual support for a claim. In the case of motions for a directed verdict and motions for summary disposition under MCR 2.116(C)(10), all factual disputes are resolved in favor of the nonmoving party. Credibility determinations are inappropriate, and the motions may be granted only if no factual disputes exist. In contrast, a motion for involuntary dismissal calls upon the trial court to exercise its function as trier of fact, weigh the evidence, pass upon the credibility of witnesses, and select between conflicting inferences, and the plaintiff is not given the advantage of the most favorable interpretation of the evidence. Although the trial court cited all these rules in reaching its conclusion, its opinion clearly looked beyond the pleadings, and the court made not only factual findings but also credibility determinations. Accordingly, the only applicable rule supporting the court's holding was MCR 2.504(B)(2). This was consistent with the trial court's explanation on the record that it would treat, and grant, plaintiff's motion for directed verdict as a motion for involuntary dismissal. Further, when a trial court's opinion does not invoke the proper court rule supporting its ruling, the appellate court may look to the substance of the holding to determine which rule governs. Because the trial court conducted an evidentiary hearing and made findings of fact after defendant presented his evidence and after plaintiff's motion for involuntary dismissal, MCR 2.504(B)(2) was clearly the applicable rule. Therefore, although the issuance of the injunction and the applicability of the RTFA were reviewed de novo, the

trial court's factual findings—appropriately made under MCR 2.504(B)(2)—were reviewed for clear error, and the court was not required to view the evidence in the light most favorable to defendant, to resolve all conflicts of evidence in his favor, or to determine whether there was a genuine issue of material fact.

2. The trial court did not err by concluding that defendant had failed to establish an affirmative defense under the RTFA. The RTFA exempts farms or farm operations from the enforcement of nuisance laws provided, among other things, that the farm adheres to the applicable GAAMPs. The RTFA also expressly preempts local laws, including zoning ordinances, that conflict with the RTFA or applicable GAAMPs. The party asserting RTFA protection bears the burden of proving that the challenged condition or activity constitutes a farm or farm operation and that the farm or farm operation conforms to the applicable GAAMPs. The MDARD investigation indicated that defendant's farm did not comply with GAAMPs manure manual, and the only evidence defendant presented to the contrary was that of his wife. Under MCR 2.504(B)(2), the trial court was not required to resolve factual disputes in defendant's favor, but rather was empowered to make its own factual findings and credibility determinations. Because the court did not clearly err in this regard, its decision was affirmed.

Affirmed.

*Murphy & Spagnuolo, PC* (by *Gary L. Bender*), for plaintiff.

*David G. Cox* and *Stephen Bemis* for defendant.

Before: BOONSTRA, P.J., and SAAD and MURRAY, JJ.

PER CURIAM. Defendant, Jeremiah Hudson, appeals as of right the trial court's order holding that his family farm constitutes a nuisance per se and enjoining his farming operations, Sweet Peas Farms. On appeal, Hudson argues that the Right to Farm Act (RTFA), MCL 286.471 *et seq.*, shielded his family farm from conflicting local zoning ordinances and that the trial

court erroneously evaluated the credibility of his evidence in determining otherwise. For the reasons explained below, we affirm.

### I. BACKGROUND

The facts of this case stretch back to August 2012 when Hudson and his family moved into their current home in Williamstown Township (the Township). To the east and north of Hudson's property is Williamston High School's property line.[1] A path to the high school's athletic fields lies immediately north of Hudson's land.

From the time his family moved in, Hudson kept farm animals on his property. Through May 2013, these animals included rabbits, pigs, chickens, goats, quail, and ducks. It is undisputed that local zoning ordinances do not permit these animals on residential property such as Hudson's. Towards the end of 2012, the Township began receiving complaints about Hudson's farm animals, so the Township took action. On December 11 of that year, the Township informed Hudson that his keeping those animals violated certain zoning ordinances because his property was located within a One Family Residential, or R-1, District. Nine days later, Hudson responded that the farm animals were there to facilitate his children's participation in 4-H. Hudson's wife then sent the Township a letter of her own explaining that the animals were necessary to feed her children because of their many food allergies and that her children participated in 4-H for the animals' proper care. Adamant that the Township had previously granted her family permission to keep the animals, Mrs.

---

[1] Although the name of the Township is "Williamstown," the largest nearby city is Williamston.

Hudson also made several attempts to amend the ordinances. None proved successful.

In the meantime, Hudson continued farming, so, on April 5, 2013, the Township filed this lawsuit. In its complaint, the Township alleged a nuisance per se based on Hudson's violation of local ordinances (1) prohibiting farming on residential property, and (2) setting forth standards for operating home businesses. The Township also requested injunctive relief. In lieu of answering, Hudson moved for summary disposition under MCR 2.116(C)(8). He argued that the RTFA preempted conflicting zoning ordinances such as the Township's.

The Township countered with its own motion for summary disposition under MCR 2.116(C)(9) and (10) on May 29, 2013. The Township maintained that the RTFA was inapplicable since the zoning ordinances predated Hudson's farm, and that the farm otherwise did not comply with the generally accepted agricultural and management practices (GAAMPs). The Township additionally contended that Hudson's farming activities were not commercial as evidenced by Hudson's changing explanations of those activities.

Hudson responded that the farm was commercial based on its sale of products, that the Township's permit process conflicted with the RTFA, and that no GAAMPs were applicable because the farm had fewer than 250 animals. Alternatively, Hudson noted that even if certain GAAMPs applied, the farm had received tentative approval under the Michigan Agricultural Environmental Assurance Program (MAEAP), which he alleged is the equivalent of the GAAMPs.

In addition to moving for summary disposition, the Township also lodged a complaint with the Michigan Department of Agriculture and Rural Development

(MDARD) on May 9, 2013. This complaint pertained to noise, odor, potential manure runoff, and water pollution from Hudson's farm. A Right to Farm investigation on Hudson's property ensued on May 17, 2013. Wayne Whitman, an MDARD Environmental Manager, led the investigation, after which he noted several concerns. They included (1) the potential for direct discharge from a surface grate outlet on the property, (2) an area of bare soil with potential for erosion, (3) areas where manure could run off onto neighboring properties, and (4) the need for soil testing where manure would be applied to the property. Whitman elaborated that Hudson needed to address these concerns before MDARD could determine whether his farming practices conformed to the GAAMPs' Manure Management and Utilization Manual (Manure Manual).

After his investigation, Whitman sent four letters to Hudson as work progressed on the property over the summer. The first, sent June 3, 2013, instructed Hudson to control polluted runoff from the property and to prevent manure discharge from the drainage system. Whitman's letter additionally directed Hudson to work with Jennifer Silveri and the Ingham Conservation District to develop a Manure Management System Plan (MMSP). That plan was required to include provisions to revegetate the bare soil in the area of concentrated flow across the backyard, manure management practices to prevent polluted water and manure from discharging into the grate and drainage structure, and soil test reports for areas where manure might be applied. Hudson's MMSP (or letter of intent to develop one) was due by July 16, 2013.

The second letter, dated June 14, 2013, confirmed receipt of Hudson's MMSP, which he had apparently

completed. Whitman still saw problems, however. Specifically, the area tested in the soil sample was for limited manure application in broad areas rather than the specific areas where manure would be applied. Additionally, Whitman reiterated the need to revegetate the bare soil in the area of concentrated flow to prevent manure runoff and to institute manure management practices to prevent polluted water and manure from discharging into the grate and drainage structure. Again, Hudson had until July 16, 2013, to submit a revised MMSP.

In the interim, on June 19, 2013, Whitman averred that Hudson still had not complied with the Manure Manual. Whitman was likewise clear that compliance with this and all applicable GAAMPs (and other conservation practices) was necessary for MAEAP approval since merely satisfying the GAAMPs under the RTFA was not equivalent.

A month later, Whitman sent a third letter. This one, dated July 17, 2013, indicated that Whitman had reviewed Hudson's e-mails indicating Hudson's implementation of the MMSP. However, that plan was apparently deficient since Whitman instructed Hudson to provide a revised MMSP and a current soil test report from soil samples where manure would be applied. If Hudson did not do this, Whitman warned, the Michigan Department of Environmental Quality would have to investigate.

On August 23, 2013, Whitman sent Hudson his last letter. This one alleged that Hudson had not complied with the GAAMP Manure Manual or submitted the appropriate MMSPs. Whitman reiterated the property's environmental risks resulting from potential erosion from the bare soil as well as manure runoff onto neighboring properties. Additionally, the storm grate

located near the shed that was used as a poultry shelter created the potential for manure discharge onto neighboring properties. Significantly, Whitman noted MDARD had yet to receive any documentation from Hudson regarding the potential pollution on his property.

In the midst of these communications, the parties' summary disposition motion hearing, slated for June 19, 2013, was adjourned when the trial court granted Hudson's request to present proofs. The ensuing evidentiary hearing commenced over three months later, on October 2, 2013. During that hearing, Hudson's evidence consisted predominantly of his wife's testimony; the Township's consisted of Whitman's letters noted previously.

Regarding the former, Mrs. Hudson testified about her family's efforts to comply with the GAAMPs (she claimed the farm was in compliance) and her interaction with the various governmental agencies and Whitman (who, she claimed, did not think the Hudsons' efforts to comply were "good enough"). Specifically, Mrs. Hudson asserted that by January 2013 the Hudsons had contacted the MAEAP to commence its verification process. In response to Whitman's investigation, letters, and even his deposition testimony,[2] the Hudsons moved their animals to a different location on the property, tested the storm grate to determine whether it discharged water, sealed that grate with concrete, submitted soil samples where manure would be applied, stored manure in plastic bags and removed it every one to two months, and, in September 2013, installed a rain garden, grass, and berm to control water runoff. As for Whitman, Mrs. Hudson

---

[2] Whitman was deposed September 4, 2013. His deposition testimony was not before the trial court in ruling on this motion.

denied—contrary to her affidavit—that there was standing water or water runoff when Whitman investigated in May. This was impossible, she claimed, since their neighbor's property to the south was at a higher elevation. Mrs. Hudson added that the demands in Whitman's letters, which were difficult to decipher, required only submitting a manure management plan and addressing the drain and runoff problems since Whitman—who had not visited the property since the May investigation—mentioned no GAAMP other than manure management. Finally, Mrs. Hudson indicated that although the farm had not received MAEAP certification or GAAMP verification because "no one" would verify the Hudsons' remedial measures, she believed the Hudsons' manure removal was GAAMP compliant. Hudson, who also testified briefly, agreed with his wife's assessment on GAAMP compliance. He also asserted that his neighbor's property to the south of his own lies at a higher elevation.

When the hearing continued February 22, 2014, the Township moved for a directed verdict, MCR 2.516, or for involuntary dismissal, MCR 2.504(B)(2). The trial court granted this motion on the record and subsequently issued a 25-page opinion and order. In its opinion, the court initially confirmed that the farm was a commercial farming operation under the RTFA. However, based on Whitman's affidavit, the court rejected Hudson's contention that GAAMP verification was unnecessary if MAEAP certification was obtained. Instead, the court held that Hudson's failure to satisfy all applicable GAAMPs—including those in the Manure Management, Site Selection, and Animal Care Manuals—precluded application of the RTFA.

Regarding the Site Selection Manual, the court ruled that the farm could satisfy neither the 250-foot property-line setback requirement (prohibiting livestock production facilities within 250 feet of the property line) given the property's dimensions nor the requirement prohibiting the construction of livestock production facilities within 1,500 feet of residential zones given the farm's proximity to Williamston High School's athletic fields. As for the Manure Manual, the court noted that Whitman's investigation and letters repeatedly required Hudson to alleviate standing water and runoff issues, but, based on Whitman's August 23, 2013 letter, MDARD had received no documentation of potential pollution from Hudson. This failure likewise precluded compliance with the Animal Care Manual. In reaching these determinations, the court expressly discounted Mrs. Hudson's testimony as lacking credibility since it was inconsistent and she otherwise admitted knowingly moving into a residential zone and not seeking a variance.

Accordingly, the court ruled that Hudson had failed to establish an affirmative defense under the RTFA and that the Township had proved a nuisance per se. On February 26, 2014, the court enjoined Hudson's farming activities as conflicting with the Township's zoning ordinances. Hudson's subsequent motion for reconsideration was denied.

Hudson appealed, but continued to farm in defiance of the injunction. He finally stopped over three months later, on June 11, 2014, i.e., the date set for hearing on the Township's motion to show cause for refusal to comply with the court's order. Although the court ultimately found Hudson in contempt for his

continuing to farm, the sanctions hearing was adjourned pending our resolution of this appeal.

## II. ANALYSIS

Hudson's appeal is straightforward. He claims that the RTFA protects his farm from the Township's zoning ordinances. Our review of the record reveals that it does not.

## A. STANDARD OF REVIEW

In rejecting Hudson's argument and enjoining his farming operations, the trial court's opinion and order cites five different rules and subrules as governing its conclusion—specifically, MCR 2.116(C)(8), (9), and (10); MCR 2.504(B)(2); and MCR 2.517. The standard of review differs for each, however, since each is, by nature, distinct from the other. See *Krass v Tri-County Security, Inc*, 233 Mich App 661, 664; 593 NW2d 578 (1999) (noting the differing standards between MCR 2.116(C)(8) and (10)); *ABB Paint Finishing, Inc v Nat'l Union Fire Ins Co of Pittsburgh, Pa*, 223 Mich App 559, 564 n 3; 567 NW2d 456 (1997) ("While grants of summary disposition motions under MCR 2.116(C)(8) are often generically referred to as 'dismissals,' they are, by their nature, distinct from dismissals under such provisions of the rules as MCR 2.504 . . . ."); *Willoughby v Lehrbass*, 150 Mich App 319, 329; 388 NW2d 688 (1986) ("The standard of review differs depending on whether the court's action was an involuntary dismissal under MCR 2.504(B), formerly GCR 1963, 504.2, a directed verdict granted under MCR 2.515, formerly GCR 1963, 515.1, a grant of summary [disposition] under MCR 2.116(C)(10), formerly GCR 1963, 117.2(3), or a denial of a motion to amend pleadings.").

Motions for summary disposition under either MCR 2.116(C)(8) or (9) test the legal support for a claim—either on the pleadings alone under (C)(8), *McManamon v Redford Charter Twp*, 256 Mich App 603, 610; 671 NW2d 56 (2003), or on the sufficiency of a party's defense under (C)(9), *Slater v Ann Arbor Pub Sch Bd of Ed*, 250 Mich App 419, 425; 648 NW2d 205 (2002). In contrast, motions for summary disposition under MCR 2.116(C)(10) and those for directed verdict, MCR 2.516, or involuntary dismissal, MCR 2.504(B)(2), test the factual support for a claim. *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995) (motions for involuntary dismissal test the factual support for a claim); *Skinner v Square D Co*, 445 Mich 153, 165 n 9; 516 NW2d 475 (1994) (motions for summary disposition under (C)(10) and those for directed verdict test the factual support for a claim).

The standards for the motions testing the factual support for a claim differ even further. In the case of motions for a directed verdict and motions for summary disposition under MCR 2.116(C)(10), all factual disputes are resolved in favor of the nonmoving party. *Foreman v Foreman*, 266 Mich App 132, 135-136; 701 NW2d 167 (2005). Credibility determinations are inappropriate, and the motions may be granted only if no factual disputes exist. *Id.* In contrast, "a motion for involuntary dismissal calls upon the trial judge to exercise his function as trier of fact, weigh the evidence, pass upon the credibility of witnesses and select between conflicting inferences. Plaintiff is not given the advantage of the most favorable interpretation of the evidence." *Marderosian v Stroh Brewery Co*, 123 Mich App 719, 724; 333 NW2d 341 (1983), citing 2 Honigman & Hawkins, Michigan Court Rules Anno-

tated (2d ed), pp 332-333.[3]

Here, although the trial court cited all of these rules in reaching its conclusion, its opinion clearly looked beyond the pleadings. Indeed, the court not only made factual findings but also made credibility determinations. All of this was done after Hudson presented his proofs at the evidentiary hearing *that he requested.* Accordingly, the only applicable rule supporting the court's holding is MCR 2.504(B)(2).[4] This is consistent with the trial court's explanation on the record that it would treat (and grant) the Township's motion for directed verdict as a motion for involuntary dismissal. This was wholly proper. *Armoudlian v Zadeh,* 116 Mich App 659, 671; 323 NW2d 502 (1982).

But even setting this explanation aside, where a court's opinion does not invoke the proper court rule supporting its ruling, we may look to the substance of the holding to determine which rule governs. See *Shields v Grandstaff,* 161 Mich App 175, 179; 410 NW2d 308 (1987) ("Although the trial court's ruling was somewhat . . . confusing, the substance of the holding was correct."), aff'd sub nom *Shields v Reddo,* 432 Mich 761;

---

[3] Although *Marderosian* pertained to MCR 2.504(B)(2)'s predecessor, GCR 1963, 504, the 1985 Staff Comment to MCR 2.504 expressly notes that the current rule is based on the prior one.

[4] MCR 2.504(B)(2) provides:

In an action, claim, or hearing tried without a jury, after the presentation of the plaintiff's evidence, the court, on its own initiative, may dismiss, or the defendant, without waiving the defendant's right to offer evidence if the motion is not granted, may move for dismissal on the ground that, on the facts and the law, the plaintiff has no right to relief. The court may then determine the facts and render judgment against the plaintiff, or may decline to render judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in MCR 2.517.

443 NW2d 145 (1989); see also *Krass*, 233 Mich App at 664-665 (reviewing the appeal under the standard for MCR 2.116(C)(10) based on the substance of the court's ruling even though motions were filed under (C)(8) and (10) and the trial court did not specify under which standard it ruled); *Armoudlian*, 116 Mich App at 671 (reviewing an order granting directed verdict as one granting involuntary dismissal).

Accordingly, because the court conducted an evidentiary hearing and made findings of fact after Hudson presented his evidence and after the Township's motion for involuntary dismissal, MCR 2.504(B)(2) is clearly the applicable rule. This means that although we review de novo the issuance of the injunction, *Webb v Smith (After Remand)*, 204 Mich App 564, 568; 516 NW2d 124 (1994), and the applicability of the RTFA, we review the trial court's factual findings—appropriately made under MCR 2.504(B)(2)—for clear error, *id.* "A trial court's findings are considered clearly erroneous where we are left with a definite and firm conviction that a mistake has been made." *Id.* We review de novo issues of statutory interpretation. *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 16; 840 NW2d 186 (2013).

Moreover, because MCR 2.504(B)(2) is the applicable rule, Hudson is incorrect that the court was required to view the evidence in the light most favorable to him, to resolve all conflicts of evidence in his favor, or to determine whether there was a genuine issue of material fact. *Willoughby*, 150 Mich App at 329. Those standards are applicable under MCR 2.116(C)(10) and MCR 2.516, but they do not apply here.[5] Mindful of the applicable standard, then, we now turn to the merits of Hudson's appeal.

---

[5] Although not fatal to its case, the Township incorrectly argues that the trial court properly drew permissible inferences from the evidence

"The RTFA was enacted to protect farmers from nuisance lawsuits." *Scholma*, 303 Mich App at 22. To this end, the statute exempts farms or farm operations from the enforcement of nuisance laws provided, among other things, the farm or farm operation adheres to the applicable GAAMPs. MCL 286.473(1); *Scholma*, 303 Mich App at 23-24. As the RTFA provides in relevant part:

> A farm or farm operation shall not be found to be a public or private nuisance if the farm or farm operation alleged to be a nuisance conforms to generally accepted agricultural and management practices according to policy determined by the Michigan commission of agriculture. [MCL 286.473(1).][6]

The RTFA also expressly preempts local laws, including zoning ordinances, that conflict with the RTFA or applicable GAAMPs:

> [T]his act preempt[s] any local ordinances, regulation, or resolution that purports to extend or revise in any manner the provisions of this act or generally accepted agricultural and management practices developed under this act. [MCL 286.474(6).]

The protections of the RTFA constitute an affirmative defense; accordingly, the party asserting RTFA protection bears the burden of proving the following: (1) that the challenged condition or activity constitutes a "farm" or "farm operation" and (2) that the farm or farm operation conforms to the applicable GAAMPs. *Lima*

under MCR 2.116(C)(10). Again, the court properly made factual findings on a motion for involuntary dismissal, not inferences under MCR 2.116(C)(10).

[6] The parties agree that MCL 286.473(2) (providing that a farm is not a public or private nuisance if the farm existed before a change in land use within a mile of its boundaries) does not apply.

*Twp v Bateson*, 302 Mich App 483, 494; 838 NW2d 898 (2013). Only the second element is at issue here.[7]

In rejecting Hudson's RTFA defense, the trial court initially held that three GAAMPs applied to Hudson's farm. However, the record contains no evidence that the farm was under investigation for compliance with any GAAMP except the Manure Manual. Indeed, contrary to the court's holding (and as Hudson points out on appeal), Hudson never admitted that either the Site Selection or Animal Care Manuals applied. Likewise, Whitman's letters and investigation pertained *only* to the farm's manure management practices. The court's rulings that Hudson failed to comply with the Site Selection and Animal Care Manuals are therefore unsupported. Compliance with the Manure Manual is a different story, however.

Regarding the farm's manure practices, Whitman's investigation clearly outlined problems concerning direct discharge from a surface grate, as well as issues concerning a bare soil area, manure runoff, and necessary soil testing. His subsequent letters reiterated those concerns. Despite Hudson's submission of two MMSPs, Whitman indicated on August 23, 2013, that the farm was still not compliant with the Manure Manual. Even worse, as of that date, MDARD still had not received *any* documentation from Hudson regarding the potential pollution on his property.

Hudson does not contest the Manure Manual's applicability on appeal.[8] Instead, he claims the farm

---

[7] The trial court held that Hudson operated a commercial farming operation, and therefore his property satisfied the RTFA's definition of "farm." See MCL 286.472(2)(a). The Township does not challenge that conclusion.

[8] The Manure Manual expressly includes provisions regarding runoff control, wastewater management, and manure application to land.

complied with it. In support, Hudson cites his wife's testimony that the farm complied with all applicable GAAMPs and that the necessary corrective action occurred *after* Whitman's most recent letter of August 23, 2013. Accordingly, Hudson maintains that Whitman's letters—which constituted the Township's only evidence at the hearing—are moot, and the trial court therefore erred, minimally, by failing to hold that a genuine issue of material fact existed.

The problem for Hudson is that the substance of the trial court's ruling fell under MCR 2.504(B)(2), not MCR 2.116(C)(10) (or any of the other rules previously analyzed). Accordingly, the trial court was not required to resolve factual disputes in Hudson's favor. Rather, MCR 2.504(B)(2) empowered the court to make its own factual findings and credibility determinations, which it did. On this score the court found Mrs. Hudson's testimony incredible based upon her contradictory statements regarding the number of animals on the farm and her understanding about how the property was zoned at the time the Hudsons moved onto their land. It was on these grounds that the court apparently discounted Mrs. Hudson's conclusion that their remedial measures (conducted after Whitman's last letter) satisfied the Manure Manual's requirements.

Because Mrs. Hudson's testimony is convoluted at best on these points,[9] we are certainly in no position to disturb the trial court's decision to discount her testimony. Indeed, inconsistent statements are important determinants of credibility, especially where the only supporting evidence is a witness's testimony and there are no "externally analyzable indicia of truth." *Wil-*

---

[9] Mrs. Hudson testified equivocally as to the number of animals on the farm and as to whether she believed the property was zoned as residential when her family initially moved there.

*liams v Williams*, 214 Mich App 391, 399; 542 NW2d 892 (1995). And in any event, Mrs. Hudson admitted that the farm had never formally received GAAMP verification. She claimed the reason for this was that "no one will come to verify that I've done everything they've asked." But the alleged remedial measures Mrs. Hudson described did not occur (and a new MMSP was apparently not written) until well after the deadlines in Whitman's letters. Moreover, while Mrs. Hudson claimed to rely on information from Whitman's September 4, 2013 deposition in decipher- ing the GAAMP requirements, that transcript was not before the court when ruling on this motion. Thus, the *only* evidence Hudson presented concerning the farm's compliance with the Manure Manual was his wife's own *ipse dixit*.[10] Again, it is this evidence whose credibility the trial court found lacking. Absent more, then, we must defer to the trial's court determination on this point and affirm the decision that Hudson failed to shoulder his burden.[11]

---

[10] Although Hudson provided additional evidence with his motion for reconsideration and in his reply to the opposition of his motion for stay (including a consultant's report that the farm was GAAMP compliant), that evidence was not before the court when it ruled on the motion for involuntary dismissal. Similarly, the offer of proof Hudson's attorney presented (which allegedly summarized the consultant's report) was in the context of his requesting reconsideration. But Hudson should have provided this evidence in his initial briefing or during the portion of the hearing addressing the motion for involuntary dismissal. Because he did not, we will not consider it now. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000) ("[W]e can find no abuse of discretion in the denial of a motion for reconsideration that rests on testimony that could have been presented the first time the issue was argued.").

[11] The Township claims that Hudson's farm is otherwise not compliant with certain changes to the Site Selection Manual approved in early 2014. That argument is moot, however, since Hudson failed to properly establish compliance with the Manure Manual, which has been appli- cable throughout the entirety of these proceedings.

Hudson accuses the court of going beyond the "permissible evidence" in rendering its decision. He bases this on the court's so-called findings that (1) Hudson admitted the applicability of the Site Selection and Animal Care Manuals, (2) the Hudsons blogged about this matter, (3) the Hudsons were defending this action on behalf of others, (4) there is a war between the residential and farming communities, (5) the Hudsons received donations for their defense, (6) the Hudsons' farm stank, and (7) rainfall would cause surface runoff. Hudson claims these findings "quite possibly had an influence" on the court's decision. The problem is—with the exception of the Site Selection and Animal Care Manuals (which we have already addressed)—none of those appears in the court's opinion and order granting involuntary dismissal. Instead, the court made those references at the show-cause hearing. Even still, Hudson's claim is, on its face, purely speculative given his conclusion that these issues "quite possibly had an influence" on the court's ruling.

Finally, we reject Hudson's challenge to the injunction since he premises this argument entirely on the wrong standard. Again, MCR 2.504(B)(2) permitted the court to make credibility evaluations and factual findings in determining whether Hudson proved his RTFA defense. Those findings were not clearly erroneous and the trial court's decision must stand.[12]

Affirmed.

---

[12] Although it appears the Hudsons may otherwise face difficulty satisfying the amendments to the Site Selection Manual as the Township notes, the appropriate forum to litigate that issue in the first instance is the trial court, not here. Regardless, the Township's argument is moot in light of our conclusion that the trial court did not err.

No costs, a public question being involved. MCR 7.219.

BOONSTRA, P.J., and SAAD and MURRAY, JJ., concurred.