*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT CREEM,

        Plaintiff-Appellant,

v

SINGH SENIOR LIVING, LLC
and WALTONWOOD AT TWELVE OAKS I, LLC,

        Defendants-Appellees,

and

SINGH MANAGEMENT CO., LLC,
WALTONWOOD AT TWELVE OAKS II, LLC,
WALTONWOOD AT TWELVE OAKS I
HOLDINGS, LLC,
and XPERT LAWN & SNOW, INC.,

        Defendants.

UNPUBLISHED
October 27, 2025
9:21 AM

No. 372823
Oakland Circuit Court
LC No. 2023-202317-NO

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

PER CURIAM.

In this premises-liability action, plaintiff, Robert Creem, appeals by right the trial court's September 24, 2024 order granting summary disposition to defendants, Singh Senior Living, LLC and Waltonwood at Twelve Oaks I, LLC's (together, "defendants"),[1] under MCR 2.116(C)(10) (no genuine issue of material fact). For the reasons stated in this opinion, we affirm in part, reverse in part, and remand.

---

[1] After stipulation by the parties, the trial court ordered the dismissal of all other defendants. Accordingly, we use the term "defendants" to refer to defendants-appellees.

-1-

## I. BACKGROUND AND FACTS

This case arises out of a slip-and-fall incident on January 3, 2022, in which plaintiff—a tenant of Waltonwood Twelve Oaks, a senior-living community ("Waltonwood")—allegedly slipped on black ice in the parking lot of the community and fell, suffering a broken ankle and other injuries. Plaintiff filed suit against defendants as the owners and operators of Waltonwood, asserting claims of common-law negligence as well as breach of the lessor's statutory duty to keep common areas fit for their intended use, MCL 554.139(1)(a).

Defendants moved for summary disposition under MCR 2.116(C)(10), contending that plaintiff did not establish that they had actual or constructive notice of the alleged black ice in light of his testimony at his deposition that "[t]he part of the parking lot that [he] drove on was not wet, or wet looking," that "[t]here was no snow on the grass or on the sidewalks," and that there was no precipitation in the parking lot. Plaintiff had testified that, upon falling, he felt black ice on the ground, which "reached from [a] snow pile to next to [his] car."

Plaintiff responded in opposition to defendant's motion and filed a countermotion for summary disposition, arguing that a reasonable jury could find that defendants had notice of the black ice. Plaintiff highlighted that the report of his expert, meteorologist Derek Kevra, concluded that "[a] series of weather events more likely than not led to the formation of black ice and/or slippery conditions in the parking lot," which existed for approximately 49 hours prior to plaintiff's injury. According to the expert report, when snow in a parking lot is pushed into a pile and several melting and freezing weather cycles follow over the next few days, it is likely that melted snow will drain adjacent to the pile and freeze into black ice if the parking lot surface is not treated properly with salt or a similar mixture. Plaintiff also contended that there was no evidence that defendants treated the ice on the premises. Lastly, plaintiff asserted that black ice in the parking lot of a senior-living community rendered the lot unfit for its intended use in violation of MCL 554.139(1)(a).

The trial court granted defendants' motion, concluding that plaintiff failed to demonstrate a genuine issue of material fact. On plaintiff's common-law negligence claim, the trial court concluded that plaintiff failed to produce evidence that defendants had actual or constructive notice of the black ice that allegedly caused plaintiff's fall. Regarding plaintiff's claim that defendants violated MCL 554.139, the trial court concluded that plaintiff failed to provide evidence that the parking lot was unfit for its intended use at the time of plaintiff's alleged fall. Plaintiff now appeals.

## II. STANDARD OF REVIEW

"This Court reviews de novo the grant or denial of a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted).

> A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any

material fact and the moving party is therefore entitled to judgment as a matter of law. [*Id.* (quotation marks and citation omitted).]

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted).

## III. ANALYSIS

## A. CONSTRUCTIVE NOTICE

We conclude that plaintiff produced evidence establishing a genuine issue of fact on the issue of whether defendants had constructive notice of the ice in the parking lot.

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). "Whether a landowner owes a duty to a visitor depends on that visitor's status as either a trespasser, licensee, or invitee." *Nathan, Trustee of Estate of Charles v David Leader Mgt, Inc*, 342 Mich App 507, 514; 995 NW2d 567 (2022). It is undisputed in this case that plaintiff, a tenant of defendant's residential property, was an invitee. See *Benton v Dart Properties, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006) (stating that "a tenant is an invitee of the landlord"). "[A]n invitee is entitled to the highest level of protection under premises liability law." *Kandil-Elsayed*, 512 Mich at 112 (quotation marks and citation omitted). "Land possessors owe a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Id.* (quotation marks and citation omitted). Specifically, "a land possessor owes a duty to use reasonable care to protect against hazards arising from natural accumulation of ice and snow." *Id.* at 149 (quotation marks and citation omitted). "[S]uch a duty will require that reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of the injury to the invitee." *Id.* at 149-150.

In a premises-liability action involving an invitee, "[a] premises owner breaches its duty of care when it knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016) (quotation marks and citation omitted). It is plaintiff's burden to prove that "the premises possessor had actual or constructive notice of the dangerous condition at issue," and the "defendant would be entitled to summary disposition if there was no question of fact that defendant lacked such notice." *Id.* (quotation marks and citation omitted). "Constructive notice is present when the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Albitus v Greektown Casino, LLC*, 339 Mich App 557, 563; 984 NW2d 511 (2021) (quotation marks and citation omitted). "Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Banks v Exxon Mobil Corp*, 477 Mich 983, 984; 725 NW2d 455 (2007).

Turning to the facts of our case, the trial court was correct that the record would not allow a finding that defendants had *actual* notice of the alleged dangerous condition. There is no evidence that anyone else fell on the day of the incident, that defendants observed black ice, or that anyone alerted defendants to the presence of black ice. Therefore, given that no evidence demonstrates that defendants observed or were otherwise made aware of the dangerous condition, there is no question of fact as to actual notice. See *Lowrey*, 500 Mich at 11.

As for constructive notice, plaintiff essentially presents two theories. His first—that defendants themselves were responsible for creating the icy conditions through their directives to a third-party snow removal contractor—is unsupported by the record. Plaintiff asserts that defendants' knowledge of the icy condition of the parking lot could be inferred, i.e., that they had constructive notice, because they directed a snow removal company, via contract, to plow the snow into snowbanks, but did not take steps to remove ice that accumulated near the snowbanks, such as by salting or sanding. The snow removal contract, which is part of the record, does require the contractor to "plow[] the open parking, driveways and pil[e] snow where it will not interfere with the normal traffic on the property," so plaintiff is correct that defendants directed the contractor to create piles of snow. But the snow removal contract also provided for "[s]alting of open parking, driveways and sidewalks . . . ." Although it is unknown whether and how often the snow removal company actually applied salt, there is also no evidence that defendants directed the snow removal company to create the piles of snow but *not* to apply salt or sand. "Parties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Libralter Plastics, Inc v Chubb Group of Ins Companies*, 199 Mich App 482, 486; 502 NW2d 742, 744 (1993). Accordingly, plaintiff's argument that defendants created the dangerous condition through their directives to the snow removal company lacks merit.

We reach a different conclusion, however, regarding plaintiff's second theory that defendants were constructively on notice, which is that the alleged defect—black ice formed from melting snowbanks—"existed for a sufficient length of time and under circumstances that the defendant is deemed to have notice . . . ." *Id*. "Constructive notice may arise not only from the passage of time itself, but also from the type of condition involved, or[,]" as argued here, "from a combination of the two elements." *Id*. at 983. Plaintiff argues that given several days of snowfall and fluctuating temperatures, the formation of black ice in a senior-living community parking lot was of such a type or character that defendants should be deemed to be on notice. See *id*. at 984. We conclude that, on this theory, plaintiff has raised a genuine issue of material fact as to constructive notice.

As stated, plaintiff presented an expert report from a meteorologist stating that the ice that he slipped on was present in the parking lot for 49 hours after two winter storms and continued freezing temperatures. More specifically, the report explained that on December 28, six days before the incident, the area experienced two to three inches of snowfall. Between December 29 and January 1, the temperature fluctuated, melting and refreezing the snow into ice. The area then received three inches of precipitation—a mixture of ice, rain, and snow—between late January 1 into early January 2. By 5:00 p.m. on January 1, temperatures fell below freezing and remained there through the end of the day on January 3—for approximately 49 hours. The expert report concludes that black ice was present in the parking lot for two full days and that defendants should

have therefore been on notice of the danger.[2] Although defendants point to plaintiff's testimony of the weather conditions at the precise time of his fall—indicating that there was no precipitation, that the part of the parking lot where he drove was not wet, and that he did not observe snow or ice on the nearby sidewalks or grassy areas—this testimony is not necessarily inconsistent with the weather conditions explained in the expert report.[3] Moreover, plaintiff testified as to his personal observation that the black ice reached from his vehicle to a snow pile in an adjacent parking space. Plaintiff's testimony about the presence of a snow bank trailed by melted ice is consistent with, and buttressed by, the inferences derived from the report—that snow in the days leading up to the incident froze, melted, and refroze, causing the formation of black ice. To the extent defendants argue that plaintiff may not rebut his own testimony of ground conditions, any purported inconsistencies in testimony involve credibility determinations for a jury to resolve. See *Arrington v Detroit Osteopathic Hosp Corp (On Remand)*, 196 Mich App 544, 553; 493 NW2d 492 (1992); *Williamstown Twp v Hudson*, 311 Mich App 276, 292; 874 NW2d 419 (2015) ("inconsistent statements are important determinants of credibility").

In light of the expert report and plaintiff's testimony about the presence of snowbanks and the black ice, whether the weather conditions before plaintiff's fall would have alerted a reasonable person to the possibility of ice forming on the parking lot is "an issue upon which reasonable minds might differ." *Piccione*, 327 Mich App at 19. This in turn creates a question of fact as to whether defendants had constructive notice of the ice that caused plaintiff to fall. See *Glasker-Davis*, 333 Mich App at 229. That is, there is a jury question as to whether the ice "existed for a sufficient length of time and under circumstances that the defendant is deemed to have notice . . . ." *Banks*, 477 Mich at 984. Therefore, the trial court erred by granting summary disposition in favor of defendants because at least one genuine question of material fact exists. See *Lowrey*, 500 Mich at 8.

## B. MCL 554.139

Turning to plaintiff's claim under MCL 554.139, we conclude that the trial court did not err by granting defendants summary disposition regarding plaintiff's statutory-duty claim because there is no genuine issue of material fact as to whether defendants' parking lot was unfit for its intended use.

MCL 554.139(1)(a) provides that, in every residential lease, the lessor covenants "[t]hat the premises and all common areas are fit for the use intended by the parties." This statute

---

[2] In its opinion, the trial court focused on weather data from the 24-hour period before plaintiff's fall in concluding that plaintiff failed to establish that defendants had notice of the black ice in the parking lot. However, viewing the evidence in the light most favorable to plaintiff, the expert report demonstrates that conditions from the winter storms several days before the fall and the subsequent thawing and refreezing temperatures were conducive to the formation of black ice. See *Glasker-Davis*, 333 Mich App at 229.

[3] The only pictures of the area where plaintiff fell were taken approximately a year after he fell, so they are not probative of the parking lot's condition at the time of the incident and whether defendants should have had notice.

"provides a specific protection to lessees and licensees of residential property *in addition* to any protection provided by the common law." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "The statutory protection under MCL 554.139(1) arises from the existence of a residential lease and consequently becomes a statutorily mandated term of such lease." *Id.* at 425. "[P]arking lots within a leased residential property that are shared by two or more, or all, of the tenants constitute 'common areas' under MCL 554.139(1)(a)." *Id.* at 428. In this case, plaintiff leased an apartment in a multiple-dwelling residential building from defendants at the time of his injury. Accordingly, MCL 554.139(1) applies to plaintiff's use of Waltonwood's parking lot.

In *Allison*, our Supreme Court stated that MCL 554.139(1)(a) "does not require a lessor to maintain a lot in an ideal condition or in the most accessible condition possible, but merely requires the lessor to maintain it in a condition that renders it fit for use as a parking lot." *Id.* at 430. The *Allison* Court described a lessor's duties under MCL 554.139(1)(a) regarding the accumulation of snow and ice in parking lots as follows:

> [A] lessor has a duty to keep a parking lot adapted or suited for the parking of vehicles. A parking lot is generally considered suitable for the parking of vehicles as long as the tenants are able to park their vehicles in the lot and have reasonable access to their vehicles. A lessor's obligation under MCL 554.139(1)(a) with regard to the accumulation of snow and ice concomitantly would commonly be to ensure that the entrance to, and the exit from, the lot is clear, that vehicles can access parking spaces, and that tenants have reasonable access to their parked vehicles. Fulfilling this obligation would allow the lot to be used as the parties intended it to be used. [*Id.* at 429.]

The Court added that the accumulation of snow or ice in a parking lot had to amount to "much more exigent circumstances" than the one to two inches of precipitation in *Allison* to render a lot unfit, stating that "[m]ere inconvenience of access . . . will not defeat the characterization of a lot as being fit for its intended purposes." *Id.* at 430.

In *Estate of Trueblood v P&G Apartments, LLC*, 327 Mich App 275, 291-292; 933 NW2d 732 (2019), this Court applied *Allison*, explaining "that a plaintiff must present more evidence than simply the presence of ice or snow and someone falling." Pointing to conflicting witness testimony whether a sidewalk was covered in snow or ice, we held that "there was a question of fact about whether the sidewalk was *completely* covered in ice," rendering it unfit for its intended use, because anyone walking on the sidewalk would "inevitably . . . confront the ice," which "is slippery and not easy to walk on." *Id.* at 292.

In this case, plaintiff contends on appeal that a question of fact exists as to whether he had reasonable access to his vehicle—and in turn, whether the parking lot was unfit for its intended purposes, particularly in light of the fact that Waltonwood and its common areas were meant for elderly tenants—because he fell on black ice in the parking lot within the first two steps of exiting his vehicle and subsequently crawled back to his car. Applying the rigorous standard mandated by *Allison* and closely examining the record evidence before us, we are unpersuaded.

-6-

Despite plaintiff's testimony that he fell within the first two steps of exiting his vehicle, plaintiff did not testify, nor does any evidence reflect, that the entire parking lot was completely covered in ice, rendering it unavoidable to park or walk on hazardous terrain. See *Lloyd v Millbrook*, unpublished per curiam opinion of the Court of Appeals, issued February 1, 2022 (Docket No. 356055), p 4 (stating that a "patch" of black ice in a common area—as opposed it to being "completely covered with ice"—creates an "inconvenience of access" under *Allison*, 481 Mich at 430, without rending it unfit for its intended purpose). In other words, plaintiff does not "present more evidence than simply the presence of ice or snow and someone falling," *Estate of Trueblood*, 327 Mich App at 291-292, or otherwise produce evidence of the "much more exigent circumstances" required by *Allison*, 481 Mich at 430. In fact, plaintiff testified that he drove past a different parking space because he "didn't desire to park in the first spot," indicating that he did not necessarily have to "confront the ice," see *Estate of Trueblood*, 327 Mich App at 292, as he could have parked in a space not near a snowbank. Although evidence that the parking lot was "*completely* covered in ice" such that plaintiff "was inevitably going to confront [it]," *id.* at 292, would likely enable plaintiff to survive a motion for summary disposition under *Allison*, there is no such evidence here. Viewing the evidence in the light most favorable to plaintiff, defendants did not breach their statutory duty under MCL 554.139(1)(a) to keep the parking lot fit for its intended use. See *Allison*, 481 Mich at 429. Accordingly, the trial court did not err in granting defendants' motion for summary disposition on plaintiff's statutory claim.

## IV. CONCLUSION

Because plaintiff presented evidence demonstrating a genuine issue of fact on the issue of whether defendants had constructive notice of the ice in the parking lot, the trial court erred by granting summary disposition on plaintiff's common-law negligence claim. Because plaintiff did not present evidence demonstrating a genuine issue of fact on the issue of whether defendants failed to keep their parking lot fit for its intended use, the trial court did not err by granting summary disposition on plaintiff's statutory claim under MCL 554.139. Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and the case remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Because neither party prevails in full, no costs may be taxed. See MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Daniel S. Korobkin